[No. 2968. Decided December 3, 1898.]

THOMAS CARSTENS *et al., Respondents,* v. ANDREW F. BURLEIGH, *as Receiver of Northern Pacific Railroad Company, Appellant.*

RAILROADS—CONTRACT OF CARRIAGE—PREVENTION OF PERFORMANCE—
CHANGE OF CONTRACT—CONSIDERATION.

Where a carrier undertakes the transportation of stock under a written contract which is rendered impossible of performance through a strike of its employees, an agent of the carrier may bind it to the performance of greater obligations in the care

and transportation of the stock by a new contract without a
new consideration.

Appeal from Superior Court, King County.—Hon.
E. D. BENSON, Judge.  Affirmed.

*Crowley & Grosscup,* and *Donworth & Howe,* for ap-
pellant.

*John E. Humphries, W. E. Humphrey,* and *E. P.
Edsen,* for respondents.

The opinion of the court was delivered by

DUNBAR, J.—This was an action instituted by respond-
ents against the predecessors of appellant, as receivers of
the Northern Pacific Railroad Company.  Action was for
the recovery of $722.70, with interest.  The complaint
alleges, in substance, that the plaintiffs shipped stock from
Dayton, Washington, over the Washington & Columbia
River railroad; that, when the stock arrived at Hunt's
Junction, the defendant took possession of them, and
agreed to ship them to Pasco and thence to Seattle; that
the stock were driven to the landing, where they were to
be placed upon a steamer; that, upon the arrival of the
stock, the captain refused to ship them, and they were left
in the possession of the defendant; that the steamer was
operated by the defendant and that, if the stock had been
received according to contract, they could have been trans-
ported so as to arrive at Yakima on the night of June 27th,
but that, on account of defendant's refusal to receive the
stock on said steamer, they were left at Hunt's Junction
without food or pasture; that, on the following day, there
was a strike on the railroad operated by the defendant,
which lasted for a period of thirty days, during which
time it was impossible to obtain feed and pasture suf-
ficient to maintain them in good condition; that the agents
of the defendant agreed that the plaintiffs should make

arrangements for taking care of and feeding the cattle during said time, and that defendant would pay the expenses of the same; that, in pursuance of said agreement, plaintiffs incurred expenses in feeding and caring for said stock, amounting to the sum of $167.70. It is further alleged in the complaint that, on account of lack of food and pasture, said stock were reduced in weight and the plaintiffs thereby damaged to a sum, including the amount expended by them, amounting to $722.70, which sum together with interest from July 31, 1894, was demanded.

The defendant pleaded in bar that the stock was shipped under a written contract on the 27th of June, 1894, which contract provided that action for damages to the stock, if any should be incurred, should be commenced within sixty days from the time the damage should occur. The case was tried to a jury, and the judgment rendered for $696. A motion for a non-suit was made and denied, and a motion to separate the items of charge in the complaint and to dismiss from consideration all matters except the charge for taking care of the stock during the thirty days of the strike was also made and denied. Defendants requested the following instructions from the court:

" 1. The jury are instructed that, if they believe that the cattle mentioned in the complaint were shipped under the written contract pleaded by defendant, the verdict must be for defendant.

"2. The jury are instructed that, if the cattle were shipped under the written contract, no subsequent agreement made by an agent of defendant could impose greater obligations on defendant, without a new consideration.

" 3. The jury are instructed that, if from the evidence in this case they believe that the cattle were delivered in Seattle, at as early a day as was possible under all the circumstances in the case, they must find for the defendant."

These instructions were refused, and the refusal of the court is alleged as error. Certain of the instructions given

by the court were also excepted to at the time and are alleged as error here.

The material question, as it seems to us, in this case, is whether these cattle were shipped under the written contract, or under the oral contract which it is alleged was afterwards made with the agents of defendant; and we think this question was submitted to the jury by the instructions of the court, and that, therefore, the first and third instructions asked for by the plaintiffs were substantially incorporated in the instructions given by the court. The court instructed the jury as follows:

" If you believe from a preponderance of the evidence in this cause that after the plaintiffs and the receivers had executed the written contract of shipment, which is introduced in evidence in this case, the station agent of defendant or of the railroad company, or receivers, was directed by the superintendent of said receivers that, if the stock had been received, he should have the same cared for, and that said agent thereupon agreed with plaintiffs that they, the plaintiffs, should care for said stock pending the delay in shipment, and to be paid therefor by defendant, and that plaintiffs did in fact necessarily expend money in caring for said cattle, then your verdict should be for plaintiffs, for one gross sum of money sufficient to compensate plaintiffs for the money so necessarily expended by plaintiffs.

" You may also include in said verdict, if you find for plaintiffs, the depreciation, if any there was, in the value of the cattle in question while they were being held after the making of the written contract; provided you believe from a preponderance of the evidence that plaintiffs held and cared for the same for the receivers in pursuance of an agreement—for the receivers and in pursuance of an agreement made by plaintiffs with the station agent, and that said agent had theretofore been expressly authorized to make such an agreement. ·

" Unless you believe that the superintendent did expressly authorize the agent to have the cattle in question cared for during the strike, at the expense of the railroad

company, or its receivers, then your verdict should be for defendant."

So that it will be seen that the question of whether the cattle were shipped under the oral contract or the written contract was expressly submitted to the jury. There was no question under the testimony but that the agent made the contract to take care of the stock and to be responsible for the expenses incurred; and the testimony is uncontradicted (which eliminates the question of the right of the agent to make this new contract) that he was instructed to do so by telegrams from the superintendent of the company.

So that, it seems to us, the only question left arises under instruction No. 2, which was asked for by the appellant, which raises the question of the right of the agent to make a new contract, which would impose a greater obligation upon the defendant than was imposed by the old contract, without a new consideration. This is a purely technical defense, but it seems to us that it could not be invoked in a case of this kind, where conditions unforeseen when the old contract was made had occurred, which rendered impossible the carrying out of the conditions of said contract. It certainly would have been within the power of the parties to the contract to have modified or changed the contract, releasing the company from its responsibility in the shipment of the stock altogether, when they arrived at Hunt's Junction and it was discovered that they could not be taken further; and, if the respondents had seen fit to have made such a new contract, they certainly would not have been allowed to have pleaded a want of consideration; if, indeed, there was not a consideration furnished by the shipper in taking charge of the stock and furnishing services which he was not called upon to furnish by the original contract, thereby relieving the agent from the necessity of a personal supervision of the

stock during the time they were held in the possession of the company.

We think no substantial error was committed in the trial of the cause, and the judgment will be affirmed.

SCOTT, C. J., and ANDERS, GORDON and REAVIS, JJ., concur.