[No. 16100.   Department One.   February 25, 1921.]

# F. C. LeDoux et al., Respondents, v. Seattle North Pacific Shipbuilding Company, Appellant.[1]

CONTRACTS (181) — EVIDENCE OF AGREEMENT — QUESTION FOR JURY. The positive testimony of a party that he had entered into an oral contract with defendant is sufficient to take the case to the jury.

CORPORATIONS (155, 162, 169) — REPRESENTATION — CONTRACTS—APPARENT AUTHORITY—EVIDENCE—SUFFICIENCY. Where the by-laws of a corporation do not authorize the secretary-treasurer to make a contract for the company, the company is not liable unless it was within the apparent authority which he assumed with the knowledge of the company; and the question is one for the jury where he was the officer in chief control of the company and to a large extent managed and directed extensive operations running into many millions of dollars, that he employed and placed on the pay roll two men as general and assistant superintendent for the construction of a plant at $300 per month, and further entered into an agreement with them for additional compensation of seven and one-half per cent of the construction cost, if the company should be successful.

CONTRACTS (12)—EVIDENCE OF AGREEMENT—REASONABLENESS. Upon an issue as to the terms of an oral contract for employment, it is admissible to prove the reasonable value of the services as tending to show the probability of the making of the contract.

WITNESSES (72, 79, 85)—CROSS-EXAMINATION — DISCRETION—LIMITATION—HYPOTHETICAL QUESTIONS. Where an expert has testified on direct examination that seven and one-half per cent of the cost was reasonable compensation for engineering services, it is error to exclude, on cross-examination, an answer to a hypothetical question which went into the details of the services performed under the contract; it not being discretionary to so limit the cross-examination.

APPEAL (395) — REVIEW — PRESUMPTIONS — ADMISSIBILITY OF EVIDENCE. The rule that error cannot be predicated on sustaining an objection to evidence, in the absence of an offer of proof as to what the answer would be, has no application to objections to proper cross-examination.

EVIDENCE (153)—PAROL EVIDENCE—RECEIPTS. Where a check was issued and accepted, reciting that it was "full settlement" of all expenses and services, it is competent to show that it was accepted on account only, under an oral agreement to make a complete settlement later.

[1]Reported in 195 Pac. 1006.

ACCORD AND SATISFACTION (2)—FORM OF AGREEMENT—RECEIPT IN FULL. Where there was an agreement to pay a certain sum on account, an accord and satisfaction is not shown by the sending and acceptance of a check for a less sum reciting that it was in full settlement.

Appeal from a judgment of the superior court for King county, Tallman, J., entered April 23, 1921, upon the verdict of a jury rendered in favor of the plaintiffs, in an action on contract. Reversed.

*Shank, Belt & Fairbrook,* for appellant.

*Kelleran & Hannan* and *John T. Casey,* for respondents.

BRIDGES, J.—By this action the respondents, as co-partners, sought to recover of the appellant judgment in the sum of $37,504.08. Their right of recovery is based upon an alleged oral contract made by James F. Twohy, on behalf of the appellant, to the effect that the respondents were to take over the superintendence of the construction and completion of appellant's ship-yard in the city of Seattle, Washington, and that for such services they were to be paid an amount equal to seven and one-half per cent of the cost of labor and materials used in such construction while they were in charge.

The appellant denied that such a contract had been entered into, and affirmatively plead that it had made a complete settlement with the respondents. There was a verdict for the total amount sued for. Upon the hearing of the appellant's motion for new trial, the court required the respondents to consent to a judgment in the sum of $22,980.83, otherwise the motion for new trial would be granted. The respondents consented to the reduction, and thereupon the motion for new trial was denied and a judgment entered in favor of the respondents for the sum last named. From this

judgment, the defendant has appealed and assigned a large number of errors.

It is first contended that there was not sufficient evidence of the contract sued upon to justify the court in submitting the case to the jury. All that need be said on this branch of the case is that Mr. Schacht, one of the respondents, positively testified that he had entered into the contract sued upon with Mr. Twohy, acting for the appellant. This was sufficient to take the question to the jury, notwithstanding Mr. Twohy denied he had made any such contract and notwithstanding appellant introduced much circumstantial evidence tending to show that the contract was unreasonable and was not made. It all amounts to a conflict in the testimony, which is for the jury.

But the appellant strenuously argues that, if such a contract was made by Mr. Twohy, it was unenforcible because he had no authority to make it on behalf of the appellant, and that the latter had done nothing to ratify it. It contends that Mr. Twohy was the secretary and treasurer of the appellant, and that he had no authority except such as the by-laws of the company expressly gave him, which were as follows:

"The secretary shall keep a fair and correct record of all the meetings of the board of trustees and stockholders, and of all other official business of the company. He shall have the custody of the corporate seal of the company and it shall be his duty to affix the same to all deeds, contracts, and other instruments of the company requiring a seal. He shall also sign with the president all deeds, contracts and other instruments.

"The treasurer shall be the custodian of the funds of the company and pay the same out by check properly countersigned as the board may prescribe and shall perform such other duties as may be prescribed for him from time to time. He shall give such bond as the board of trustees may from time to time require."

On the contrary, respondents contend that Mr. Twohy's whole power and authority was not obtained from the by-laws, and that appellant held him out to the world as having authority to make this contract and do many things which the by-laws did not expressly authorize him to do, and that he at all times held himself out as having such additional power and authority and exercised the same, all to the knowledge and with the consent of the corporation.

It has generally been held that, unless authority is expressly conferred on a secretary and treasurer or he is clothed with apparent authority by being entrusted with the management of the business or a part of it, he has no authority to make contracts on behalf of the company, and that a secretary and treasurer not having authority by virtue of his office to make such a contract, the corporation for which it is made cannot be held liable unless he has been held out by the corporation as having such authority, or unless he has exercised it with the knowledge and consent of the corporation. But this court in *Livieratos v. Commonwealth Security Co.*, 57 Wash. 376, 106 Pac. 1125, has held that:

"In this day and age when so large a part of the business of the commercial world is transacted through the agency of corporations, those dealing with them cannot be expected to prove the authority of corporate agents by producing a power of attorney under the corporate seal. They have a right to rely upon the apparent authority of those with whom they deal, and for acts done within the scope of that authority the corporation is bound."

It is manifest that the by-laws did not vest in the secretary and treasurer authority to make the contract here involved. We must, therefore, look to the evidence to see whether Mr. Twohy, with the knowledge

and consent of the corporation, held himself out as having authority for that purpose, or whether the corporation acknowledged him to have such authority.

As everyone knows, immediately after the United States entered the recent world war, the governmental authorities began insistently to press upon the people the great necessity for ships. Prior to the first of April, 1918, the Erickson Engineering Company, of Seattle, in answer to the request of the government, had made certain preparations for shipbuilding. Long before these preparations had been consummated and long before the shipyard had been constructed, Twohy Brothers, of which Mr. James F. Twohy was a stockholder and officer, became interested in the enterprise of the engineering company; and such early tentative arrangements were made as that the Twohy Brothers were to become half owners of the stock and property of the engineering company, and that company was to be re-organized and its name changed to the present appellant, or a new corporation formed to be known as the present appellant, to which the engineering company was to transfer all of its shipbuilding property. Mr. James F. Twohy was the principal representative of Twohy Brothers in all of these negotiations, and in fact throughout the shipbuilding period he continued to live in Seattle and to be the chief representative there of Twohy Brothers' interest in the appellant company and its business. It was largely through his efforts that the company was rapidly organized and financed and put in position and condition for the building of ships for the government. Twohy Brothers is a very large concern and are extensive contractors. There was testimony tending to show that, prior to the first of April, 1918, the building of the shipyard was not making very satisfactory progress. Mr. Schacht and the LeDouxs had previously

done contracting work for Twohy Brothers, and Mr. James F. Twohy seemed to have great confidence in their ability to push things along, and apparently desired to have them connected with the shipbuilding corporation then being organized.

It is conceded by the appellant that Mr. Schacht, on or about April 1, became the general superintendent for the construction of the plant, and that Mr. Frank LeDoux held a position immediately under him. It is amply proven, if not conceded, that the appellant agreed to pay these two men at the rate of three hundred dollars per month, and it is conceded, or at least amply proved, that such contract of employment as was made was made solely by and through Mr. Twohy. It was he who induced these men to come to Seattle; it was he who put them to work; it was he who put them on the payroll at three hundred dollars per month; it was he who made with respondents whatever contract was made. We have, then, a condition where it is proven, if not conceded, that Mr. Twohy, on behalf of the corporation, employed and had authority to employ these two men. In fact, his testimony was to the effect that he employed them, and that he caused them to be put on the payroll at three hundred dollars per month, and that it was understood between him and them that, if the company were successful, they were to get some additional compensation. The real question, then, is not as to the employment but as to the compensation to be paid.

It would seem that, if Mr. Twohy had authority to hire these men and to fix their compensation at three hundred dollars per month, with something in addition under certain circumstances, that that was, in itself, sufficient to carry the case to the jury on the question of whether Mr. Twohy had the authority to agree upon a greater compensation than that conceded by the

company. Another instance might be mentioned which
lends strong support to the view that Mr. Twohy had
the authority which is claimed by the respondents, and
that is that after the shipbuilding was over the board
of trustees of the appellant ordered that Mr. James F.
Twohy be paid the sum of thirty thousand dollars in
addition to the compensation theretofore paid him for
his services to the company:

"for the reason that he was very largely instrumental
in the original organization of the operating force of
the company and has actively participated in the ad-
ministration of the corporation through the entire
operation of the company; and there was a tacit under-
standing at the commencement of the venture, among
the officers and trustees of the company, that the execu-
tive officers should be paid an additional compensa-
tion in accordance with the success of the venture and
commensurate with compensation afforded to like
executives in similar enterprises."

It is true that Mr. Twohy had no official position with
the company other than as its secretary and treasurer,
and that the by-laws did not give him, as such, any
authority to make the contract here sued on; but ex-
perience teaches us that it is very common for officers
of a private corporation to exercise functions far be-
yond those formally given by the by-laws. So in this
case, one cannot read the testimony without being im-
bued with the idea that Mr. Twohy, possibly aside
from Mr. Erickson, was the very head and shoulders
of the appellant and to a very large extent managed
and directed its extensive operations, running into
many millions of dollars. A very careful reading of
the abstract of the testimony and parts of the state-
ment of facts, which is more than seven hundred pages,
thoroughly convinces us that there was ample testi-
mony to carry the case to the jury on the question of

Mr. Twohy's authority on behalf of the appellant to make the contract which was sued on.

But appellant contends that, even if there was evidence to show a contract such as that sued on, there was nothing to show it was made with the plaintiff copartnership. We cannot sustain this contention. The plaintiff Schacht testified expressly that the contract was made for and on behalf of the copartnership, and that Mr. Twohy was fully advised of that fact. We do not think it necessary to discuss this question further than to say that a careful reading of the testimony convinces us that the court was right in submitting that question to the jury.

The respondents introduced the testimony of two or more witnesses tending to show the reasonable value of the services performed by them. It is claimed that this testimony was improperly received. It must be remembered that the real dispute in the case was as to the terms of the employment rather than as to the employment itself. Under these circumstances, it has many times been held by this and other courts that testimony is receivable which tends to show the reasonable value of the services. This is for the purpose of tending to show what the contract was. Testimony tending to show that the services of respondent were reasonably worth the sum they allege was agreed to be paid them, would tend to prove that there was such a contract; on the other hand, testimony tending to show that the amount contended for would be extortionate would tend to prove that the contract was not what they claimed it was. *Coey v. Darknell*, 25 Wash. 518, 65 Pac. 760; *Warwick v. Hitchings*, 50 Wash. 140, 96 Pac. 960; *Dimmick v. Collins*, 24 Wash. 78, 63 Pac. 1101; *Noyes v. Pugin*, 2 Wash. 653, 27 Pac. 548; *Robertson v. O'Neill*, 67 Wash. 121, 120 Pac. 884; *McCowen v.*

*Northeastern Siberian Co.*, 41 Wash. 675, 84 Pac. 614;
*Dickson v. Darnell*, 98 Wash. 301, 167 Pac. 937. We
think the testimony was competent.

But a somewhat more difficult question arises in
this connection. Mr. Thomas W. Baker was one of
the witnesses by whom respondents sought to show
the reasonable value of their services. On direct ex-
amination they asked him the following question:

"In this case, Mr. Baker, the plaintiffs, Mr. Schacht
and LeDoux & LeDoux, claim that they have a con-
tract, an agreement with the defendant, the Seattle
North Pacific Construction Company, by the terms of
which they claim that they were to receive seven and
one-half per cent of the cost of labor and material that
went into the construction of that shipyard during the
time that they were on the work. I will ask you, from
your experience as an engineer and contractor, Mr.
Baker, if that is a reasonable sum for those services."

The witness gave an affirmative answer. On cross-
examination, the witness was asked a certain hypo-
thetical question to which objection was made and
sustained. He was then asked the following question:

"Mr. Baker, I will state another hypothetical ques-
tion to you. There is a shipbuilding plant in process
of construction. It was established—the land was pur-
chased in the fall of 1917; it originally embraced about
fourteen acres; subsequently it was added to so that
it embraced at the time I am going to make my inquiry
of you, twenty-seven acres. We will assume that that
shipbuilding plant is fairly represented on April 1,
1918, by the second photograph of plaintiff's exhibit
'I,' that was the condition of the plant on the 3rd day
of April, 1918. On that day a man comes there, finds
an organized lot of men, about two hundred and fifty
men at work, the mold lofts up to the extent shown
here, three and a half acres of the shipyard planked, as
against four and a half total to be planked, and he
finds foremen in charge of different departments; he
makes no change in the office organization or in the

auditing department at all; he is a man who brings with him no organization; he has never been in the construction of shipbuilding plants at all before; he is a man who has had a high school education, not beyond that, and he spends two months on the plant in general charge of the work, giving orders and assuming to have control of the organization, he changes some of the employees or the heads of the departments and adds one or two others; he leaves; he has been there two months, during which time he had added from a hundred to one hundred and fifty additional laborers to the general number of employees, and assumes general charge of the plant. For such service as that, what would you say the man should receive per month?"

The court sustained an objection to this question, and we cannot avoid the conclusion that in so doing it erred. Both the question on direct and on cross-examination sought to disclose what would be a reasonable compensation for the services performed, or to be performed by the respondents. The only material difference between the two questions was that that asked on direct examination did not go into details concerning the amount of services performed or the length of time in their performance, while the question on cross-examination did go into these details. The court sustained the objection,

"because this witness was simply called to ascertain whether or not this was a reasonable contract, not whether this was reasonable compensation at all, but whether this was a reasonable contract. . . ."

The court was mistaken as to the purport of the direct examination. It did not call for an answer as to whether the contract sued upon was a reasonable one, but the direct answer sought was whether seven and one-half per cent would be a reasonable compensation. It would not have been proper to have asked the

witness whether the contract sued on was a reasonable one or whether reasonable men would have entered into it, because those were questions entirely for the jury. The proper question was the one asked, which was whether seven and one-half per cent would be a reasonable compensation; for, if the jury should believe such to be a reasonable compensation, it might conclude that reasonable men would have entered into the contract sued upon, and therefrom concluded that the contract was actually made. But, in any event, the cross-examination was along identical lines with the direct examination. It seems to us that, where a witness has testified that seven and one-half per cent was a reasonable compensation for services in superintending the construction of this plant, it was very material, indeed, for the opposite party to cross-examine on the particular work done by the respondents.

The respondents argue, however, that the question was improper because it did not include the services performed by the respondents other than Mr. Schacht. We do not think this position is tenable. The appellant's attorney had the right to conduct his cross-examination in any manner he saw fit. He had a right to separate the services performed by the several respondents and in that manner obtain an answer to the reasonable value of such services.

But it is contended that, in any event, cross-examination of this character is within the discretion of the trial court. In the case of *Levine v. Barry, ante* page 623, 195 Pac. 1003, we said:

"It is our view that the cross-examiner may rightfully propound hypothetical questions based entirely on conjectural facts for the purpose of testing the skill. and knowledge of the witness, and, where he has not had an opportunity to present his proof as to the facts, his hypothetical question may be based on his conten-

tion of what the facts will be as they may be developed later by his testimony, for the purpose of throwing light on the facts as they may ultimately be submitted to the jury.  The privilege of such character of cross-examination is a right which does not rest in the discretion of the court; but the extent to which such cross-examination shall go does rest in the discretion of the court."

The question to which objection was sustained was the first in the cross-examination which went to the merits of the witness' testimony in chief, and it cannot, therefore, be said that the examination had proceeded to such an extent as that the court might exercise a discretion.  Indeed, it was not on this ground at all that the court sustained the objection.

But respondents assert that appellant is in no position to urge this objection, because it did not state to the court, or offer to prove, what answer the witness would make to the question.  The position they take in this regard is clearly stated by this court in *Olive Co. v. Meek*, 91 Wash. 169, 157 Pac. 460, as follows:

"Error will never be presumed but must affirmatively appear from the record.  Counsel for appellant did not follow up the ruling of the lower court by making any offer to prove, and in the absence of such an offer we cannot assume what the answer of the witness would have been.  Hence it cannot be determined from the record that the ruling complained of was prejudicial."

This doctrine, however, can have no application to cross-examination.  It was, of course, impossible for appellant to make any offer as to what this witness would testify because, he being a witness called by the respondents, it would have no way of knowing what answer the witness would make.  In sustaining the objection to this cross-examination, the court was clearly in error.

But, it is contended that, if the contract sued upon was entered into, a complete settlement had been made. It appears that, after Mr. Schacht had been on the work for two months, some friction arose between him and the general manager, and he was requested to and did resign and leave the job. Mr. Frank LeDoux continued to work for an additional month, during which period he performed largely the services which had previously been performed by Mr. Schacht, and there is testimony to show that, when he left on July 1, the construction of the shipyard was well towards completion. According to Mr. Schacht, it was after he had quit that he had some talk with Mr. Twohy concerning compensation, the result of which was that Mr. Twohy, on August 13, by letter, sent Mr. Schacht the company's check for fourteen hundred dollars, stating that it was, "in settlement of your account to date." On the back of this check was the following:

"In full settlement to date of all expenses and services rendered, a/c Twohy Bros. Company and Seattle North Pacific Shipbuilding Company."

This check was accepted and cashed by Mr. Schacht and, over appellant's objection, he was permitted to testify that the check was not sent or received in full settlement. His testimony was to the effect that it was understood between him and Mr. Twohy that at that time there were no figures available upon which the compensation agreed on could be calculated, and that it was understood that this check for fourteen hundred dollars would be sent him for the purpose of giving him some immediate cash which he needed, and that a complete settlement would be had later. He further testified, over objection, that he did not read the endorsement on the check and did not know it was there until after the commencement of this suit.

We think this testimony was admissible. Whether there has been an accord and satisfaction is generally a question of fact, and if this check was sent with the understanding that it was only on account, it could not be considered as payment in full, notwithstanding any endorsement to that effect on the back of the check. It was, of course, for the jury to determine whether the check was agreed to be sent on account. The general rule is that, where a debtor sends to his creditor a check for the amount he is willing to pay, and at that time informs the creditor that he intends the check to be considered as full payment, then, by the acceptance and cashing of the check, the creditor agrees to the settlement and cannot thereafter seek additional compensation. But that rule is inapplicable to the situation here as testified to by Mr. Schacht. Where there is an agreement that a certain sum shall be paid on account and not in full settlement, the sending of a check which shows that it is in full settlement does not, as a matter of law, accomplish an accord and satisfaction. *Allen v. Tacoma Mill Co.,* 18 Wash. 216, 51 Pac. 372; *Phelps Lumber Co. v. Bradford-Kennedy Co.,* 96 Wash. 503, 165 Pac. 376.

We think, therefore, that the court properly received this testimony. In this connection it is further contended that the court's instruction on this matter was erroneous. We do not think it necessary to present this instruction at length. It followed the law as we have here announced it to be.

It is not likely the other questions discussed in the briefs will arise in a retrial, and for that reason we do not deem it necessary to consider them. For the error hereinbefore pointed out, the judgment is reversed and the cause remanded for a new trial.

PARKER, C. J., MACKINTOSH, HOLCOMB, and FULLERTON, JJ., concur.