[No. 20188.   Department One.   February 1, 1927.]

HARRY CANNON, *Appellant*, v. SEATTLE TITLE TRUST COMPANY, *Respondent*.[1]

[1] MORTGAGES (18)—ABSOLUTE ASSIGNMENT AS MORTGAGE—INTENT OF PARTIES.  Upon an issue as to whether the assignment of a mortgage amounted to a loan or was a sale with an option to repurchase, the form of the transaction will be disregarded, and the intention of the parties is controlling.

[2] SAME (18, 22)—ABSOLUTE ASSIGNMENT AS MORTGAGE—INTENT OF PARTIES—EVIDENCE—ADMISSIBILITY.  Upon an issue as to whether the assignment of a mortgage amounted to a loan or was a sale with an option to repurchase, either party may testify as to what his intention was.

[3] MORTGAGES (23)—ABSOLUTE DEED AS A MORTGAGE—EVIDENCE—WEIGHT AND SUFFICIENCY.  Within the rule requiring clear and convincing evidence to show that a conveyance, absolute in form with an option to repurchase, was in fact a loan, there was sufficient to take the case to the jury, where plaintiff applied to a loan company for a loan of $32,000 on the security of a real estate mortgage for $49,500, secured on property in which the net equity was not less than $94,000 and which application the loan company would accept only in case it was put in the "form" of a sale and option, running sixty days, and there was testimony that plaintiff intended and claimed that it was a loan.

[1]Reported in 252 Pac. 699.

[4] MORTGAGES (22)—ABSOLUTE DEED AS MORTGAGE—EVIDENCE—AD-
MISSIBILITY. Where the assignment of a real estate mortgage
for $49,500 with an option to repurchase, was in fact given as
security for a loan for $32,000, it is error to exclude evidence of
the net value of the equity in the mortgaged property.

[5] EVIDENCE (46)—RELEVANCY—CUSTOMS AND COURSE OF BUSINESS.
Upon an issue as to whether the assignment of a second
mortgage to a loan company with an option to repurchase,
was in fact given as security for a loan, it is error to exclude
evidence that the loan company had not at any time previously
purchased second mortgages outright.

[6] EVIDENCE (99)—SELF SERVING DECLARATIONS—MEMORANDUM.
Upon an issue as to whether a transaction was a loan or a sale
with an option to repurchase, the minutes of the meeting of
the board of directors setting out the transaction four days
thereafter, is inadmissible as a self serving declaration.

[7] EVIDENCE (86)—ADMISSIONS—OFFERS OF COMPROMISE. A letter
written with reference to the settlement or compromise of a
controversy that had arisen at that time is properly excluded.

Appeal from a judgment of the superior court for
King county, Findley, J., entered February 18, 1926,
upon the verdict of a jury in favor of the defendant, in
an action on contract. Reversed.

*Tucker, Hyland & Elvidge* and *Stephen V. Carey,* for
appellant.

*Roberts & Skeel* and *D. D. Mote,* for respondent.

MAIN, J.—The plaintiff brought this action seeking
to recover a money judgment for interest, which he
claims had been exacted from him by the defendant in
a greater amount than the law permits. The cause
came on for trial before the court and a jury. At the
conclusion of the plaintiff's evidence, the defendant
challenged the sufficiency thereof and moved the court
to enter a judgment in its favor. This motion was
overruled. At the conclusion of all of the evidence, the
motion was repeated and by the court sustained. From
the judgment dismissing the action, the plaintiff ap-
peals.

The facts essential to be stated are these: The respondent is a corporation and is engaged in business in the city of Seattle. The corporation's business was divided into three departments, that of loan, trust and safe deposit. The appellant owned a second mortgage upon what is referred to as the Keystone Apartments in the city of Seattle, upon which there was a balance due of approximately forty-nine thousand five hundred dollars. The appellant desired to borrow thirty-two thousand dollars and give the mortgage as collateral security. For this purpose he went to the loan officer of the respondent and was told, as he testifies, that the company could not let him have the money in the form of a loan, but would take an assignment or transfer of the mortgage to the corporation and give an option of repurchase. On October 6, 1924, the appellant, by bill of sale regularly executed and acknowledged, transferred the mortgage to the respondent. At the same time and as a part of the same transaction, the respondent gave him a written option, duly signed and acknowledged, to repurchase the mortgage within a period of ninety days. This time was subsequently extended for a period of thirty days. Before the time had expired, the appellant desired to redeem the mortgage by paying interest thereon at the rate of twelve per cent per annum. This request was refused by the officer of the respondent having charge of the transaction. The respondent, before the option expired, sold the mortgage to another person for forty thousand dollars, thirty-four thousand dollars of which was paid to the respondent to take up the mortgage and the balance to the appellant. Thereafter the appellant, claiming that the transaction was a loan and that usurious interest had been exacted of him, brought this action for the purpose above stated.

[1]   The question is whether the transaction was a loan or a sale with an option of repurchase. Where there has been a sale absolute in form and an option to repurchase given and the claim of usury is made, the form of the transaction will be disregarded and its substance will control.. *Uhler v. Olympia,* 87 Wash. 1, 151 Pac. 117, 152 Pac. 998; *Washington Fire Ins. Co. v. Maple Valley Lumber Co.,* 77 Wash. 686, 138 Pac. 553. In the latter case it was said:

"The respondent, Maple Valley Lumber Company, by affirmative defense, charged that the transaction was usurious. Where the defense of usury is relied upon, the burden of proving the usurious character of the transaction is upon the party alleging it. 29 Am., & Eng. Ency. Law (2d ed.), p. 541. In determining whether the particular transaction is usurious, courts will disregard the form and look to the substance of the transaction. 39 Cyc. 918; *Cooper v. Nock,* 27 Ill. 301; *Lukens v. Hazlett,* 37 Minn. 441, 35 N. W. 265; *Clemens v. Crane,* 234 Ill. 215, 84 N. E. 884."

Whether the transaction was a loan or an absolute sale with the right of repurchase depends upon the intention of the parties at the time. In *Johnson v. National Bank of Commerce,* 65 Wash. 261, 118 Pac. 21, it was said:

"The only question we need to consider is, Did the parties intend that the transaction should be a mortgage? It is well settled that the character of the transacion is fixed at its inception and that it is what the intention of the parties makes it."

[2]   The controlling question being the one of the intention of the parties, either party has a right to testify as to what that intention was. In *Malloy v. Drumheller,* 68 Wash. 106, 122 Pac. 1005, it is said:

"It is well settled that, when the character of the transaction depends upon the intention of a party, he may testify what his intention was when he did the

particular thing in controversy. The weight of such testimony is for the jury."

In a note to the case of *Rogers v. Blouenstein,* 124 Ga. 501, 52 S. E. 617, 3 L. R. A. (N. S.) 213, it is said:

"The question whether a purchase of property with an agreement to reconvey at an advanced price payable in the future constitutes a usurious transaction depends upon the intent of the parties, since intent is the essential element of usury. The real inquiry in every case is whether there has been a borrowing and lending at a greater rate of interest than the law allows, and this is purely a question of fact to be determined from all the circumstances of the particular case."

[3] It will be admitted that the rule is that, where the conveyance is absolute in form with an option of repurchase, the one asserting that it was a loan must establish that fact by evidence which is clear and convincing. *Reynolds v. Reynolds,* 42 Wash. 106, 84 Pac. 579; *Nutter v. Cowley Investment Co.,* 85 Wash. 207, 147 Pac. 896.

The first error assigned relates to the ruling of the trial court in withdrawing the case from the jury and entering a judgment for the defendant. Whether this ruling was correct depends upon whether there was evidence which the jury had a right to believe was clear and convincing and from which they could find that the intention of the parties was that the transaction, while in form a sale and option, was in fact a loan. The appellant testified:

"In the early part of October, 1924, I went to the Seattle Title Trust Company to deal with respect to this mortgage. I was dealing with Mr. Younger, who was at the head of the loan department of the Seattle Title Trust Company, assistant secretary, I think. I told Mr. Younger I wanted to borrow thirty thousand dollars. I offered to give him this mortgage as security for that loan. I told him that I had this mortgage

which he was familiar with and I wished to borrow thirty thousand dollars on it. He was absolutely familiar with it. He was trustee for it. I had made the Seattle Title Trust Company trustee for the mortgage, for the former owner, which was given originally in September, 1923. From September, 1923, to October, 1924, I had several conversations with Mr. Younger concerning this mortgage. Then, in October, 1924, I went to him and applied for a loan. He told me that he would take it up with the Board and let me know at 9 o'clock the morning following. The papers were executed the day after I applied. They were executed on October 6th. I first talked to Mr. Younger on the 4th, at 9 o'clock on the morning of October 5th at the office of Seattle Title Trust Company at the corner of Second and Columbia, Mr. Younger said he could not make it in the form of a loan, but they could handle it by making a direct sale to them, and to make it secure for me he would give me an option to buy it back. He said that they could not do it in the form of a loan. That was on October 5th. I met Mr. Younger and Mr. Geary in the office the following morning. Mr. Geary prepared the papers and brought them into the office for me to sign, the assignment of the mortgage, and also the option for me to buy it back, and we signed them both at the same time in the office of the Seattle Title Trust Company. I received at that time thirty-two thousand dollars. About the time that my option agreement was to mature, or when this money was about to fall due, I made tender to the Seattle Title Trust Company of the amount I claimed to be owing on what I claim was a loan. The original ninety day transaction had been extended for thirty days. I tendered them thirty-two thousand dollars, plus 12% interest.''

Another witness called by the appellant and who was familiar with the transaction, the firm of which he was a member having interested itself in an endeavor to assist the appellant to secure a loan from another party prior to the time that he went to the respondent, testified:

"We knew that Mr. Cannon was attempting to go out and get a loan and put the mortgage up as collateral security, either that or sell it. When he came back, he said he had sold it and got an option back, and all he had to do was to raise the money, pay it off, and whatever was left belonged to him. It amounted to the same thing as a loan. To my mind, the transaction was in effect a loan."

The testimony of the appellant with reference to the character of the transaction is unequivocally denied by the loan officer of the respondent. It is not our function to weigh the testimony, but only to determine whether there is sufficient evidence to take the question to the jury.

[4] Upon the trial the appellant offered to prove that "the Keystone Apartments had a value of not less than one hundred sixty-five thousand dollars, leaving a net equity over and above the first mortgage of not less than ninety-four thousand dollars to secure the second mortgage of forty-nine thousand dollars." The respondent objected to this evidence and it was excluded. The evidence should have been admitted. In 27 Cyc. 1012, it is said:

"When the question at issue is whether a deed of land, with an agreement for reconveyance, was made as an absolute conveyance of the property, or simply as a security for a debt or loan, in the nature of a mortgage, evidence of the value of the property at the time the deed was made is pertinent and material. For if it shall be shown that the consideration passing between the parties, or the amount to be paid by the grantor on exercising his right to repurchase, would be fairly proportioned to the value of the property, if considered as a debt or loan secured by a mortgage thereon, but grossly inadequate if regarded as the price of the land on an outright sale, this will tend strongly to show that a sale could not have been intended, but that the transaction should rather be treated as a mortgage."

In the case of *Collins v. Denny Clay Co.,* 41 Wash. 136, 82 Pac. 1012, the court held that the sole object of the corporation was to hold lands, the value of which lands was competent to show the value of the stock. If in such a case the value of the lands is competent for the purpose of showing the value of the corporate stock, it must follow that where the value of a real estate mortgage is a material inquiry that the value of the property which it covers may be shown. In principle, the two cases appear to us to be the same.

[5] The appellant complains of the ruling of the trial court in rejecting evidence offered by him to the effect that the respondent had not, prior to the present transaction, at any time purchased outright second mortgages. It seems to us that this evidence should have been admitted. If this were the only error complained of, it is probably true that it would not justify a reversal. It cannot be said that the evidence had no bearing upon the question at issue. In 22 C. J. 748, it is said:

"It is usually considered that when, in the opinion of the court, such a relevant course of conduct or dealing on the part of a given individual is established as to render its continuance to the time involved in the issue probable, its existence may be used as evidence that he acted in accordance with it on a particular occasion, provided such course of conduct is shown to have been continuous and systematic. There are, however, a number of cases in which evidence tending to show a course of conduct has been rejected as not sufficiently probative of the doing, on a particular occasion, of an act in accordance therewith."

Considering, then, the evidence admitted and that which should have been admitted, it seems clear to us that the question of fact as to the nature of the transaction was one for the jury.

It is argued that the cross-examination of the appellant rendered his testimony so indefinite and unworthy of belief that no one can say that it was clear and convincing. We have given careful attention to all of the evidence of the witness and are of the view that the weight of the testimony was for the jury.

[6] Upon the trial, over the objection of the appellant, there was introduced in evidence an excerpt from the minutes of a meeting of the board of trustees held on October 10, 1924, or four days after the transaction occurred, which purports to set out the transaction and recites an approval by the trustees. This, it appears to us, was nothing more than a self-serving declaration, made after the transaction occurred and in the absence of the adverse party. It was no more admissible than would a memorandum made by the appellant several days after the transaction purporting to set forth his views of it have been admissible. In *Conner v. Seattle, Renton & S. R. Co.*, 56 Wash. 310, 105 Pac. 634, 134 Am. St. 1110, 25 L. R. A. (N. S.) 930, it was held that a conductor's written report of an accident to a passenger, made at the time and soon thereafter given to the defendant in compliance with its rules and custom, was inadmissible, as it was a self-serving statement made in its own interest and for the purpose of facilitating its defense. The excerpt from the minutes of the board of trustees should not have been received in evidence.

[7] Finally the appellant complains of the ruling of the trial court in rejecting a letter written by one of the attorneys for the respondent on October 24, 1924, and addressed to Carter, McDonald and Miller. This letter was written with reference to the settlement or compromise of a misunderstanding that had arisen at

that time, and the ruling of the court in rejecting it was proper.

The judgment will be reversed, and the cause remanded for a new trial.

TOLMAN, MITCHELL, and FULLERTON, JJ., concur.