[No. 21124. Department Two. October 11, 1928.]

JOHN J. HEWITT, *Respondent*, v. FRANKE M. JONES, *Appellant*, S. R. BALKWELL, *as Trustee, etc., Intervener and Cross-Appellant*, HENRY HEWITT, *Defendant*.[1]

[1]Reported in 271 Pac. 76.

*E. R. York* and *A. F. York,* for appellant Balkwell.
*Frank C. Neal, L. R. Bonneville,* and *B. D. Scott,* for appellant Jones.
*John H. Powell,* for respondent Hewitt.

FRENCH, J.—In the year 1907, John J. Hewitt, Henry Hewitt and A. J. Hayward discovered that there was for sale by the state of Washington a section of timber land which it was thought might ultimately prove to be of great value. Charles H. Jones, of Tacoma, an uncle of the Hewitts, advanced the money to purchase this land. Mr. Jones died in November, 1922. His estate was duly administered and distributed, and all his rights and interests in the contract covering the timber lands became vested in his widow, Franke M. Jones. A. J. Hayward died in November, 1913, and his interest in the contract for the timber became vested in S. R. Balkwell, as trustee of his estate. Largely through the efforts of John J. Hewitt and Henry Hewitt, the timber was sold in August, 1925, for one hundred thousand dollars.

Owing to the bar of our statute relative to testimony concerning transactions with deceased persons, the terms of the transactions between these parties relative to the timber must be taken almost entirely from the books of Charles H. Jones, where the following entry appears:

Sec. 35, T. 11, R. 2 West, 1907, Sept. 7,

| | | |
|---|---|---|
| Purchase of S½ N. W., NE¼, SE¼, SW¼ | | $15,600.00 |
| Checks Fidelity Trust Co. | $1,680.00 | |
| | 3,094.00 | |
| | 3,704.50 | |
| And draft of A. J. Hayward | 3,046.50 | |
| | $11,525.00 | |
| Check Bank of California | 4,075.00 | |
| | | $15,600.00 |

When sold proceeds to be divided as follows, between:

| | |
|---|---|
| C. H. Jones | 4/10 |
| John J. Hewitt | 3/10 |
| Henry Hewitt, 3rd | 1/10 |
| A. J. Hayward | 2/10 |

After deducting all expenses and interest.

This action was instituted by John J. Hewitt to obtain his share of the profits from the transaction. The entry on the ledger sheet, a portion of which we have quoted, purports to have been made September 7, 1907. Thereafter certain moneys were advanced by Charles H. Jones covering taxes and other expenses, and these amounts appear to have been regularly entered on the same ledger sheet from time to time as the expenditures were made.

Beginning in March, 1912, on the same ledger sheet, Charles H. Jones began to enter up an interest charge on this timber account at the rate of seven per cent, compounded annually. In December, 1926, Franke M. Jones submitted to S. R. Balkwell her statement showing all expenses in connection with the cost of the timber, with interest at the rate of seven per cent per annum, compounded annually, tendered her check for $3,059.37 in full payment of Hayward's claim, stated that settlement had been made or was about to be made with the Hewitts on a like basis, and this check was accepted and cashed.

Settlement was made with Henry Hewitt on the basis of the interest computations being figured as set forth on the ledger sheet. John J. Hewitt refused to settle on this basis, however, his claim being that there was no rate of interest provided in the agreement; that interest on the investment should be figured only at the legal rate of six per cent. Balkwell, as trustee of the estate of A. J. Hayward, deceased, having been made

a party to this action, also made the same claim, and demanded the difference between his share of the profits which would accrue by computing the interest on the original investment at six per cent, simple interest, in lieu of seven per cent compound interest, the basis on which settlement had been made. John J. Hewitt recovered judgment for his three-tenths share of the profits, computing the interest on the original investment at six per cent simple interest; and as to Balkwell, trustee, the court denied recovery on the ground that there had been an accord and satisfaction. This appeal follows.

From an examination of the brief of Franke M. Jones, it is apparent that the only dispute now remaining between the parties is over the rate of interest, and its manner of computation. The claim is made that the ledger sheet is evidence of the fact that seven per cent, compounded annually, was the agreement of the parties, because of the fact that Charles H. Jones had charged interest at that rate. An examination of the ledger sheet shows that the first entry of interest was made approximately four and one-half years after the contract was evidenced by the first entry on the books. There is no evidence of any kind that these entries were known to any of the other parties to the agreement.

"It is another requisite of the admissibility of account books that the entry be made at or about the time of the transaction. . . . If not so made the entries are no part of the register. They are mere independent declarations of the party in his favor." Jones on Evidence, § 572.

See, also, 22 C. J., p. 881, § 1069; *Goldsworthy v. Oliver*, 93 Wash. 67, 160 Pac. 4; *Cannon v. Seattle Title Trust Co.*, 142 Wash. 213, 252 Pac. 699.

This ledger sheet, kept by Mr. Charles H. Jones, appears to be all private personal memorandum. It was admissible as admissions against interest of the party making it, but it was not a partnership book of account as that term is ordinarily used. We have been unable to find anything in the record to show that any person other than Mr. Jones ever saw this book. All entries made therein were in his own handwriting; none of the items therein contained had ever been called to the attention of any other party, so far as this record discloses.

"The book to be admissible must be a record of things actually done and not of orders, executory contracts and things to be done subsequent to entry." Jones on Evidence, § 574.

See, also, 22 C. J., § 1060; 10 R. C. L. 385.

That part of the ledger sheet touching on the interest account, the entries of which began four and a half years after the date of the transaction, was clearly inadmissible. A different question might have been presented had the interest entries commenced on the first due date.

Our interest statute, Rem. Comp. Stat., § 7299, reads as follows:

"Every loan or forbearance of money, goods, or thing in action shall bear interest at the rate of six per centum per annum where no different rate is agreed to in writing between the parties. The discounting of commercial paper, where the borrower makes himself liable as maker, guarantor or indorser, shall be considered as a loan for the purposes of this chapter."

Contention is made that the statute does not apply to transactions of this kind; but we think the statute is all-inclusive unless the parties have, by their agreement, provided otherwise. True, in a partnership

transaction, the parties may, by contract, treat the advances by one partner as not being a "loan or forbearance" which is entitled to any interest. It may provide that he is entitled to share in the profits only to such an extent as to exceed the lawful rate of interest without violating any usury statute. But these parties did not so provide.

The situation created was that this property purchased owed Mr. Jones the purchase price, the carrying charges, and interest. This was much the same as if these parties being engaged in a more extended partnership, and needing money, Mr. Jones had advanced twenty thousand dollars taking a mortgage only on certain real estate for the twenty thousand dollars and interest. On foreclosure of such mortgage, the word "interest" has a fixed and definite meaning. "Interest is the premium allowed by law for the use of money." Vol. 4, Words & Phrases, p. 3706. The contract provision here in question is "after deducting all expenses and interest." In the absence of any qualifying words, our statute gives to the word "interest," when used in a contract of any kind, a fixed and definite meaning, to wit: six per cent simple interest.

The lower court held that, as to the appellant S. R. Balkwell, there had been an accord and satisfaction. The money was realized from this property in 1925. Settlement was made with appellant Balkwell in the latter part of the year 1926. At that time it was the serious contention of appellant Franke M. Jones that the contract alleged was one for broker's commission, and was within the statute of frauds.

There was also a dispute between appellant Jones and appellant Balkwell as to the rate of interest to be charged. That this dispute existed is borne out by the following letter written June 12, 1909.

"NORTHWESTERN LUMBER COMPANY,
HOQUIAM, WASH.
RAMSEY AND JONES, MENOMINEE, MICH.
C. H. JONES, TACOMA, WASH.
A. J. Hayward,        Tacoma, Wash, June 12, 1909.
725 Commerce Street,
Tacoma, Wash.

Dear Sir: Please send me your check for $460.70, being $374.40 interest due me for carrying your 1-5 interest in that state timber on the Cowlitz River, and $86.30 for your share of the taxes I am paying today. I put the money up on Sept. 7, '07, and the above interest is figured for 18 months.

Yours truly,
C. H. Jones."

It will be noticed that, by the terms of this letter, Mr. Jones had demanded eight per cent interest. This letter was evidently received by Mr. Hayward in his lifetime, and was found among his effects and produced by his trustee. The pleadings show a disputed claim, and the evidence clearly reveals the fact that a controversy existed between these parties as to what amount, if any, was due. It plainly appears from the record that, at the time of the giving and acceptance of the check in question, appellant Jones intended to pay the full amount due, and appellant Balkwell accepted the check and cashed the same knowing that it had been given for the purpose of paying in full. The law relative to accord and satisfaction has been well stated in the case of *Plymouth Rubber Co. v. West Coast Rubber Co.,* 131 Wash. 662, 231 Pac. 25, where this court, speaking through Bridges, J., said:

"Another branch of the rule, adopted by this court, is that, if the indebtedness is unliquidated and is disputed, payment by the debtor of an amount less than that claimed by the crelitor, and the receipt by the latter of such amount under such circumstances as

that he is bound to know that the intention was to make the payment in full of all demands, will discharge the whole claim, and the creditor may not thereafter collect any additional sums. Under these circumstances there is an agreement to compromise the differences between the parties, and there being a dispute, a consideration for the agreement exists. *Thayer v. Harbican,* 70 Wash. 278, 126 Pac. 625; *LeDoux v. Seattle North Pacific Shipbuilding Co.,* 114 Wash. 632, 195 Pac. 1006; *First National Bank of Ritzville v. White-Dulaney Co.,* 123 Wash. 220, 212 Pac. 262; 1 A. & E. Ency. Law, (2d ed.), 413, *et seq.;* 1 C. J. 527, 539, 541; 1 R. C. L. 184, 194.''

We think the facts in this case bring it squarely within the foregoing rule.

Judgment affirmed.

FULLERTON, C. J., MAIN, ASKREN, and HOLCOMB, JJ., concur.