[No. 22769.    Department One.    April 24, 1931.]

R. D. INMAN et al., *Respondents*, v. W. E. ROCHE FRUIT COMPANY, *Appellant*.[1]

O. R. *Schumann* and *LaBerge, Cheney & Hutchison,* for appellant.

*Richards, Gilbert & Conklin,* for respondents.

HOLCOMB, J.—Some thirty-two cherry growers, residing in the Grandview District of Yakima county, formed a voluntary organization known as the Grandview Cherry Pool, and appointed R. D. Inman, John Payne, and K. C. Parsons, as a committee to act for them for the purpose of selling their cherries during

[1]Reported in 298 Pac. 342.

the fruit growing season of 1929. This committee entered a contract in writing with appellant, a fruit company engaged in business in Yakima county, Washington. Negotiations were carried on between the committee and W. E. Roche, president and manager of appellant. The contract which was entered into was prepared in the office of appellant. The written contract reads:

"CHERRY SALE CONTRACT

"This contract entered into this 6th day of June, 1929, by and between the Grandview Cherry Pool, hereinafter called the seller, and W. E. Roche Fruit Company, hereinafter called the buyer.

"WITNESSETH: For and in consideration of the sum of $5,000.00 receipt of which is hereby acknowledged, the seller agrees to sell and does sell to buyer, and the buyer agrees to buy, and does buy from the seller, all the Bing, Lambert and Black Republican Cherries which are under contract to the seller by various growers, prices to be paid to seller are as follows:

"Bing cherries, 68 tons at 15c per pound; Lambert cherries 23 tons at 15c per pound; Black Republican 10 tons at 8c per pound; Royal Ann cherries, 16 tons at 9c per pound. Late sour cherries at 6c per pound.

"All cherries are to be paid for in cash when loaded aboard cars for shipment.

"The $5,000.00 down payment to be deposited in escrow at First National Bank of Grandview, Wash., and to apply on the last car or cars of cherries shipped, as the case may be, and to apply as a guarantee that the terms of this contract may be fulfilled.

"All money to be paid to the seller or his agent, and seller agrees to make settlement to the individual growers.

"Cherries to be hand-picked, clean from all dirt, packed free from bird pecks, worms, scale, shrivel, immature and rain soaked cherries. All cracked cherries shall be classified as culls.

"Stemless cherries to be classed as marketable unless the skin of the cherry is broken. In case the skin is broken they shall be classed as culls. All stemless

cherries in excess of 15% by weight in each box shall be classed as culls.

"Cherries to be packed in 15 lb. net, standard cherry boxes, faced and jumbled, with liners or fancy curtains.

"The final date of delivery by seller to buyer aboard cars shall be June 30th, 1929.

"Signed: GRANDVIEW CHERRY POOL,
By R. D. Inman,
John Payne,
K. C. Parson,
*Its Committee Seller.*
W. E. ROCHE FRUIT COMPANY, *Buyer,*
By W. E. Roche, *Pres.*"

Before this written contract was fulfilled, and very shortly after its execution by the parties thereto, according to the amended complaint of respondents, it was orally modified at the instigation and request of appellant's president as follows: That after the execution of the written contract, appellant offered to sort, pack, and grade the cherries sold under contract, and to pay the price named in the contract, after deducting for culls weighed back, to the end that the cherries might be sorted, graded, and packed to the satisfaction of appellant and its trade, and it was thereupon mutually agreed between the parties that appellant would pack, grade, and sort the cherries, and pay the price named in the written contract, and that the contract was executed by both parties pursuant to such oral agreement for packing, sorting, and grading.

In their action, respondents demanded judgment for a balance alleged to be due them, in accordance with the modified contract, in the sum of $738.98.

After a trial to the court, without a jury, it made findings of fact and conclusions of law in favor of respondents, and gave judgment for the above balance.

The trial judge filed a memorandum opinion, giving his analyses of the issues, facts, and several conten-

tions of the parties, which is the basis of the findings of fact and conclusions of law. Inasmuch as the findings of fact are somewhat lengthy, the memorandum opinion will be here set forth:

"Plaintiffs contend that Exhibit 'A', which is a contract entered into between the Cherry Pool, and W. E. Roche Fruit Company, subsequent to its execution was modified to the extent that the defendant agreed to pack, grade, and sort the cherries and pay the price named in the contract, Exhibit 'A.' Defendant on the other hand contends that there was no such modification of the contract and that the agreement contemplates that the cherries in question were to be paid for in cash when loaded aboard cars for shipment. The contract is rather inaptly drawn but it seems to me that the paragraph 'Cherries are to be paid for in cash when loaded aboard cars for shipment' merely specifies the time of payment. It seems to me that the contract is clear to the effect that the defendant purchased various varieties of cherries at the price stipulated, less the culls. There is a paragraph in the contract which defines the culls. The provisions in the contract as follows: 'Cherries are to be packed in 15 lb. net cherry boxes, faced and jumbled with liners or fancy curtains' to my mind necessarily means that the seller would pack the cherries. If the intent of the contract was for the buyer to pack the cherries it would be unnecessary to specify the kind of boxes, the liners and the curtains. If the contract as written does not contemplate that the cherries shall be packed by the sellers, that provision is mere surplusage. It is a cardinal rule of interpretation that effect is to be given to every provision of the contract if it may be done consistently with the intention of the parties.

"The whole 'set up' in this case leads me to believe that the version of the plaintiffs is correct. The evidence is undisputed that the defendant's employees weighed the cherries in, and after sorting, weighed the culls back and allowed for tare. Employees of the defendant also prepared the records, plaintiffs' Exhibit 'B' and 'C.' The court cannot understand why this would be done unless the data thereby preserved

was to be used in determining the amount due and owing the seller. It is quite reasonable to believe that the plaintiffs would desire to be paid when each car was shipped because that is one of the proper methods to protect their interests. The fact that they were paid when each car was shipped does not militate at all against the view that the seller was to be paid for net weight after deducting the culls and tare. The evidence shows that Roche never knew the number of boxes shipped out that belonged to the pool. The original provision of the contract, the fact that the defendant packed the cherries; the fact that his employees kept a record of the gross, and the net weights; the fact that Roche's employees required the growers to receipt for their culls; the fact that they kept records of the gross, the tare, and the net; the fact that Roche never knew the number of boxes in the shipments belonging to the pool, are inconsistent with defendant's theory of this case.

"Learned counsel for the defendant maintains that the evidence shows an accord and satisfaction. The rule is well settled that in order to constitute an accord and satisfaction it is necessary that the money should be offered in full satisfaction of the demand, and be accompanied by such acts and declarations as amount to a condition that the money, if accepted, is accepted in satisfaction; and it must be such that the party to whom it is offered is bound to understand therefrom that, if he takes it, he takes it subject to such conditions. The mere fact that the creditor receives less than the amount of his claim, with knowledge that the debtor claims to be indebted to him only to the extent of the payment made, does not necessarily establish an accord and satisfaction. Where, however, a sum of money is tendered in satisfaction of the claim, and the tender is accompanied with such acts and declarations as amount to a condition that if the money is accepted it is accepted in satisfaction, and such that the party to whom it is offered is bound to understand therefrom that if he takes it subject to such condition, an acceptance of the money offered constitute an accord and satisfaction. In case of *Ingram v. Sauset,*

121 Wash. 444, the court held that where an account was in dispute, the cashing of a check for an admitted balance, mailed with the debtor's itemized statement of the account, without conditions attached is not an accord and satisfaction, although the creditor understood that the debtor intended it as full payment, where it was not so accepted; since there was no meeting of the minds.

"Applying the rule above enunciated to the facts in the above case at bar it is quite obvious that the acceptance and cashing of Roche's check of July 5th, and the release of the $5000.00 in the Grandview Bank by Roche, does not constitute an accord and satisfaction. The evidence is quite clear to the effect that the check would not be accepted as final payment.

"For the reason herein stated, judgment will be rendered in favor of the plaintiff in the sum of $738.98."

On appeal, while a number of errors are assigned by appellant, a large part of its contentions devolves principally upon whether or not the contract in writing was modified by the parties. Many references are made to certain portions of the record to sustain the contention that not only is the contract plain and unambiguous, and should be enforced as written, but that it was not modified in fact, and that it would be very unlikely and improbable that such modification would be made because of certain market requirements and regulations of state and national horticultural character.

The testimony of the important witnesses in this case has been read from the statement of facts, itself, the exhibits have been examined, and the case as a whole considered.

There is no preponderance contrary to the finding of the trial court that the contract was modified orally. It may also be considered as a favorable circumstance that the modification of the contract would be advantageous to appellant for the reasons

given by him to the witnesses for respondents. It is no more improbable that the modification would be advantageous to appellant than that it would be disadvantageous to respondent. Since the trial court accepted the testimony and evidence of respondents as being the more credible and trustworthy, we can find no reason to disturb the findings.

Another reason advanced by appellant in its reply brief why the conclusion and judgment of the trial court is wrong, is that a new consideration is an essential and indispensable element for a new contract, citing 6 R. C. L. 917, *Wright v. Tacoma,* 87 Wash. 334, 151 Pac. 837.

The rule stated in *Wright v. Tacoma, supra,* is that

"There is no doubt of the rule that a subsequent agreement, which does not form any part of the original contract, is of no force or validity unless supported by a new consideration."

In the case at bar there is no question but that the subsequent agreement forms part of the original contract in writing.

In *Long v. Pierce County,* 22 Wash. 330, 61 Pac. 142, it was decided that the contract, when modified by the subsequent oral agreement, is substituted for the contract as originally made, and the original consideration attaches to and supports the modified contract. That principle was reaffirmed in *Stofferan v. Depew,* 79 Wash. 170, 139 Pac. 1084. See, also, *Carstens v. Burleigh,* 20 Wash. 283, 55 Pac. 221.

Appellant strenuously insists that every element of accord and satisfaction is present in this case. It is asserted that there was a dispute and a violent one, which is true, an established indebtedness, a tender of a certain amount in full satisfaction, and an acceptance thereof. To sustain this contention, appellant cites the following of our cases: *LeDoux v.*

*Seattle North Pacific Shipbuilding Co.,* 114 Wash. 632, 195 Pac. 1006; *James v. Riverside Lumber Co.,* 121 Wash. 130, 208 Pac. 260; *First National Bank of Ritzville v. White-Dulaney Co.,* 123 Wash. 220, 212 Pac. 262; *Plymouth Rubber Co. v. West Coast Rubber Co.,* 131 Wash. 662, 231 Pac. 25; *Hotel Randolph Co. v. Watrous Co.,* 144 Wash. 215, 257 Pac. 629; and other cases from outside jurisdictions.

The consensus of all our cases from *Rogers v. Spokane,* 9 Wash. 168, 37 Pac. 300, to and including *Hewitt v. Jones,* 149 Wash. 360, 271 Pac. 76, is that the question of accord and satisfaction is always a question of intention, and a meeting of minds, so as to create an accord of the parties, is an essential feature. *Ingram v. Sauset,* 121 Wash. 444, 209 Pac. 699. See, also, *Joyner v. Seattle,* 144 Wash. 641, 258 Pac. 479.

There was positive evidence on behalf of respondents that they refused to accept the $5,000 check which had been deposited in a bank in full settlement and satisfaction of their demand, and that appellant's president, Roche, told them that when he could get it back from his lawyer he would give it to them, so that they could settle with the growers and there would be no strings on it.

The trial court having accepted this evidence as credible and adopted it, the finding thereon cannot be disturbed.

We find no sufficient reason for disturbing the findings, conclusions, and judgment of the trial court, and they are affirmed.

TOLMAN, C. J., MITCHELL, PARKER, and MAIN, JJ., concur.