[No. 18652.  *En Banc.*  December 12, 1924.]

PLYMOUTH RUBBER COMPANY, INCORPORATED, *Appellant,*
v. WEST COAST RUBBER COMPANY, *Respondent.*[1]

ACCORD AND SATISFACTION (2, 4)—FORM OF AGREEMENT — TENDER AND ACCEPTANCE—LIQUIDATED CLAIM—CONSIDERATION. Notwithstanding the amount due for goods sold was liquidated and determined, there was an accord and satisfaction by a return of part of the goods with a check, tendered "in discharge of the indebtedness," with an explanation of circumstances from which the creditor was bound to know that it could not accept part of the tender and reject the remainder, the creditor having retained the check without giving notice for fifty days that it would not accept the goods (PARKER, MACKINTOSH, and PEMBERTON, JJ., dissenting).

Appeal from a judgment of the superior court for King county, Gilliam, J., entered December 22, 1923, upon sustaining a demurrer to the complaint, dismissing an action on contract. Affirmed.

*Melville Monheimer,* for appellant.

*Van Dyke & Thomas,* for respondent.

BRIDGES, J.—A demurrer to the complaint having been sustained, the plaintiff refused to further plead, and has appealed from a judgment dismissing the action.

The complaint alleges the following facts: Plymouth Rubber Company (predecessor in interests of the appellant) did business in Massachusetts, and the respondent in the state of Washington. Prior to December 1, 1920, the respondent had purchased and received from the Plymouth Company a certain quantity of Toesans, and thereby became indebted to it in the sum of $6,778.95. As of December 3, 1920, respondent wrote the Plymouth Company the following letter:

"During the month of June, we sold in the city of Seattle to some of our bigger stores, some 150 cases

[1]Reported in 231 Pac. 25.

of Women's Toesans for future delivery. We packed them aside and had them ready for shipment this fall.

"You will perhaps remember that we asked you before if you could help us out with a lot of Toesans that we had on hand and you were kind enough to wire to some of your distributors and we thank you for it. Perhaps it will not be out of place to tell you the reason for the trouble we have had with the Toesans.

"We have in our city a department store called the .    .    .    They are similar to the big 'Fair Store' in Chicago.

"They are selling a little cheaper than other stores. They also have what is called the Basement Bargain Store. The buyer for this basement goes East several times a year buying up job lots.

"This store bought a big lot of Toesans from us at regular prices for fall delivery—we have been able to get regular prices for rubbers for several years.

"We held their order and a lot of others for Toesans waiting for permission to ship, and the last day of September we received a notice from the ————— to cancel the order. We did not know the reason for this change and sent our salesman to inquire what the reason could be and he was told that the buyer had wired them from the East, stating that he had bought a lot of Toesans at a much lower price than what we sold them for.

"We did not want to make any complaint about it because we thought perhaps we could dispose of our stock to other people, but the ————— commenced to advertise Toesans at 49c per pair and the rest of our customers commenced to complain to us and of course refused to buy more. We still held on and tried to pacify our customers, stating that the Toesans as sold by the ————— were damaged and punched goods, but as the ————— advertised Toesans using this name, we were of course helpless and find ourselves now entirely overstocked.

"You can realize that our big market is in the city of Seattle. We do not sell Toesans in the country, therefore, as we are sending a check today, we are deducting the Toesans that we cannot dispose of this

year. We do not blame you for this condition. No doubt you sold Toesans that were damaged and did not think that they would be shipped.to Seattle. We have told you our troubles and no doubt you can realize our position.

"The ————— is still selling Toesans at 49c and judging from the stock they have on hand, there will be enough to last this winter and perhaps have some for next.

"We are, therefore, compelled to return these Toesans for credit and ask that you kindly render us credit for whatever we return. If you can stop Eastern jobbers and brokers, that might pick up punched Toesans, from shipping to the Pacific Coast, I believe it would be a good thing.

"Take a large city like New York or Chicago, they can be sold without disturbing the market, because the city is so large that a sale of that kind cannot be noticed.

"We are sorry that this trouble came up and that it should come up in this way.

"Thanking you for past favors, we remain,"

The check mentioned in the letter was enclosed therein, and was for $1,352.93. The notations on it were these: "This check is issued in payment of the following items and endorsement by the payee thereof constitutes receipt therefor. In case of error or difference return check immediately." Beneath this were the figures of the total debt on account of the purchase of the Toesans, and notations showing the return of some of the merchandise in the value of $5,426.02, leaving the amount of the check as enclosed. The check itself is dated December 18, and it is probable that, although the letter was dated December 3, it was not mailed until December 18, or after. This, however, is a relatively unimportant matter. The Plymouth Company received the letter and check in due course of mail, probably about December 25, and cashed the check. The returned merchandise arrived at the place

of business of the Plymouth Company about February 1, 1921, being about a month after the arrival of the check. The Plymouth Company refused to accept the returned merchandise, but did not at that time advise the respondent of such refusal. Meanwhile the creditor had become involved in financial difficulties and receivers were appointed. They also refused to receive the merchandise.

Some twenty days after the arrival of the goods in Massachusetts, and about 50 days after receipt of the check, the receivers wired respondent that they refused to accept the merchandise, asked what disposition should be made of it, and stated that credit had been given for the amount of the check. This seems to be the first notice that the goods would not be accepted. In answer respondent called attention to its letter of December 3, and claimed that the receivers were bound to accept the goods. The latter again wired their refusal, and advised that if respondent did not give some order for disposition of the goods they would be sold in Massachusetts, and credit would be given for the amount received on the sale, less expenses. Respondent not having given any directions, the receivers took possession of the goods, sold them on the most advantageous terms, and gave credit for $2,011.05, leaving a claimed balance of $3,400.39, with interest. Subsequently appellant became the owner of the claim against respondent, and instituted this suit to recover the alleged balance.

The respondent contends that the complaint shows an accord and satisfaction, and it was probably on this ground that the demurrer was sustained and the action dismissed. The appellant, however, contends that, because the original creditor refused to accept the returned goods, there was no discharge of the indebtedness.

Accord and satisfaction is founded on contract, and a consideration therefor is as necessary as for any other contract. One rule of law with reference to accord and satisfaction, which has been adopted by this court, is that, if a claim of indebtedness is liquidated and undisputed, and is due and owing, payment by the debtor and receipt by the creditor of any amount of money less than the whole amount of the indebtedness will not discharge the balance, and this is true even though, at the time of making the payment, the debtor announced that he intended thereby to pay in full the entire indebtedness. The reason for this rule is that there is no contract and no consideration, because the debtor was in law bound to pay in full that which he admits he owes.

Another branch of the rule, adopted by this court, is that, if the indebtedness is unliquidated and is disputed, payment by the debtor of an amount less than that claimed by the creditor, and the receipt by the latter of such amount under such circumstances as that he is bound to know that the intention was to make the payment in full of all demands, will discharge the whole claim, and the creditor may not thereafter collect any additional sums. Under these circumstances there is an agreement to compromise the differences between the parties, and there being a dispute, a consideration for the agreement exists. *Thayer v. Harbican,* 70 Wash. 278, 126 Pac. 625; *LeDoux v. Seattle North Pacific Shipbuilding Co.,* 114 Wash. 632, 195 Pac. 1006; *First National Bank of Ritzville v. White-Dulaney Co.,* 123 Wash. 220, 212 Pac. 262; 1 A. & E. Ency. Law (2d ed.), 413 *et seq.;* 1 C. J. 527, 539, 541; 1 R. C. L. 184, 194.

A third rule is that if the indebtedness is liquidated and undisputed, and the debtor tenders something other than money, or both money and other property,

and the tender is made under such circumstances as that the creditor is bound to know that it is made in full payment (*Ingram v. Sauset,* 121 Wash. 444, 209 Pac. 699), or he agrees in advance to accept the tender in full payment, then the acceptance by the creditor of the tender, or any part of it, will work a full discharge of the indebtedness. This is so because there is both a contract and a consideration, and the latter exists because of the tender and acceptance of something other than money. While, as already pointed out, payment of a part of a liquidated and undisputed debt that is due and owing will not extinguish the debt although it may be so agreed, any new consideration moving from the debtor towards the creditor will take the agreement out of the operation of that rule. In other words, the first rule that we have announced applies only where the payment is made in money; but if the payment is made in property, or property and money, there will be a sufficient consideration to support the agreement to accept the lesser sum in full payment. Such additional consideration may be the passing of any property which might be a burden to the one party or a benefit to the other, and the courts will not stop to inquire concerning the value of the property. 1 C. J. 527, 544, 565. This court has not heretofore been required to apply this third rule.

There can be no doubt that, at the time respondent sent its check and returned a part of the merchandise to the original creditor, it was indebted in the full amount of the purchase price of the goods kept and those later returned, and that such amount was liquidated, determined and undisputed. The whole transaction amounted to nothing more nor less than that the respondent, while admitting its indebtedness in the sum of more than $6,000, sought to discharge it by payment partly in cash and partly in property.

It is manifest that respondent has not brought itself within either the first or second rule of law that we have stated. If the judgment is to be affirmed it must be by virtue of the third rule. Let us see if that rule is controlling under the facts. Here we have a liquidated and undisputed indebtedness and the tender of money and property. The serious question is whether the remainder of the rule is present. Of course, the creditor was not required to make a settlement of this character, and it would be bound only in the event it agreed so to do. It was entitled to payment in money if it so demanded. It is not, of course, necessary that there be an express agreement to accept property; the facts may be such that an implied agreement arises. This, then, brings us back to the question whether the tender of the check and the property was made in such manner and under such circumstances that the creditor was bound to know that it could not accept a part of the tender and reject the remainder.

Reading the letter and the check together, we are of the opinion that the creditor was fully informed that the check and the property were so tied together by the tender as that one could not be accepted and the other refused. It is as though the respondent had said to the creditor, "we are sending you our check for the amount of merchandise we have retained and returning the remainder of the property to you in discharge of our indebtedness to you." It is true neither the check nor the letter expressly stated that the tender of the money and the property was in full payment or satisfaction of the whole debt, or that both must be either accepted or rejected; but such are the necessary inferences. The tender of the check and the return of the merchandise were inseparable acts. If the creditor was not willing to accept the return of the merchandise its plain duty was to return the check. Because it

accepted a part of the things tendered it, it thereby impliedly agreed to accept the remainder.

It is our opinion, therefore, that all the elements of the third rule are present here, and that the demurrer was properly sustained.

Judgment affirmed.

MAIN, C. J., FULLERTON, HOLCOMB, TOLMAN, and MITCHELL, JJ., concur.

PARKER, J. (dissenting)—I think it appears with a fair degree of certainty that the check was tendered and accepted as a cash payment for that portion of the account that was concededly due, and that the return of the goods was a tender in satisfaction of the balance of the account. I cannot see that the acceptance of the check constituted an accord and satisfaction of any portion of the account other than the amount that was concededly due. I, therefore, dissent from the conclusion reached in the majority opinion.

MACKINTOSH and PEMBERTON, JJ., concur with PARKER, J.