[No. 36008. Department Two. August 30, 1962.]

WALTER D. BREAR, *Appellant*, v. KLINKER SAND & GRAVEL COMPANY, *Respondent.**

*Reported in 374 P. (2d) 370.

*Rummens, Griffin, Short & Cressman,* for appellant.

*LeSourd, Patten & Adams,* by *Max D. Crittenden* and *Stanley B. Allper,* for respondent.

DONWORTH, J.—This action arose out of the alleged breach of a written contract, executed by the parties in January, 1958, wherein appellant agreed to furnish the necessary labor and equipment to crush 60,000 cubic yards of rock at respondent's gravel pit on Maury Island at ninety cents per yard. Respondent agreed to furnish sufficient material to produce at least 60,000 yards of crushed rock by the end of the year 1958 with an option to appellant "for crushing in 1959." It failed to produce to the minimum agreed yardage, the amount of the shortage being one of the issues of fact in this case.

On November 27, 1959, appellant instituted this action against respondent seeking $12,719.70 damages because of respondent's failure to furnish the full 60,000 yards for crushing. This item was later voluntarily reduced by appellant to $9,000.

Respondent, in its answer, admitted the execution of the contract, but denied most of the other allegations of the complaint. Respondent affirmatively pleaded an accord and satisfaction concerning appellant's claim and, also, in its counterclaim, asserted a breach of the contract by appellant, which allegedly caused respondent damages in the sum of $7,200.

The cause was tried to the court sitting without a jury. At the close of all the evidence, the trial court rendered

its oral decision to dismiss both the complaint and the counterclaim. Thereafter, appellant's motion for a new trial was heard and denied. From the judgment entered in accordance with the decision, this appeal has been taken.

Since the two principal questions raised by the nine assignments of error depend for decision on factual issues, we set forth the following findings of fact entered by the trial court:

"II. That on or about January 25, 1958 the plaintiff and the defendant entered into a written contract, a copy of which is attached to the complaint on file herein, by the terms of which the plaintiff furnished labor and equipment in order to crush rock for the defendant and this contract, among other things, contained the following statement:

" 'The contractor herewith guarantees a minimum of 60,000 c.y. for 1958, with an option to subcontractor for crushing in 1959.'

"III. That pursuant thereto the plaintiff, in April of 1958, commenced to crush rock for the defendant and did continue crushing rock for the balance of the calendar year 1958; that defendant was unable to supply the plaintiff with sufficient material to crush 60,000 cubic yards of rock in 1958 but did supply plaintiff with sufficient rock to enable plaintiff to crush a substantial portion of the 60,000 cubic yards in 1958 and plaintiff was paid for crushed rock as he delivered it.

"IV. That plaintiff would have suffered a loss even if plaintiff had crushed 60,000 cubic yards in 1958 and plaintiff has not established what it would have cost the plaintiff to crush the balance of the rock between what he crushed and 60,000 cubic yards in 1958; and plaintiff has not established what loss, if any, plaintiff suffered nor established that he suffered any loss from defendant's failure to supply plaintiff with sufficient rock to crush 60,000 cubic yards in 1958.

"V. That plaintiff continued to crush rock during the first part of 1959 and received payments by check from defendant in 1959; and on or about March 26, 1959 the final amount owing to plaintiff by defendant was in dispute and the defendant, as a debtor, offered to settle any and all claims between plaintiff and defendant and did tender to the plaintiff a check dated March 26, 1959 in the amount of $600.00, a copy of which is attached to the answer on file herein, and this check was given by defendant to plain-

tiff in full settlement of all disputed claims between the parties and contained on the reverse side thereof the following endorsement:

" 'Payment in full for crushed rock and constr. shed.'
That defendant's offer of settlement was agreed to by plaintiff accepting said check in settlement of all accounts owing and the settlement was completed when plaintiff cashed the check and received the money therefor; and plaintiff never did nor did he offer to return the money from said settlement. That settlement by this check being offered, accepted and cashed in full settlement constituted an accord and satisfaction in fact between the parties in relation to all claims and counterclaims between the parties as alleged in plaintiff's complaint and in defendant's cross complaint."

There is no question that respondent was in breach of the contract in failing, by at least 11,633 cubic yards, to supply the minimum of 60,000 yards of rock to crush guaranteed by the contract.

However, the trial court found in favor of respondent regarding two of its affirmative defenses, either of which rulings, if not in error, is sufficient to support the judgment dismissing appellant's action. The first finding was that the acceptance of a check for $600, endorsed "payment in full for crushed rock and const. shed," constituted an accord and satisfaction, in full settlement of all claims which appellant might have against respondent. The second finding was that appellant was barred from recovery because he did not produce sufficient evidence of the damage he suffered as a result of respondent's breach of the contract.

Appellant contends, first, that the $600 check did not constitute an accord and satisfaction.

The trial court found (finding No. 5, quoted above) that appellant crushed rock for respondent in 1959, and, for *this* work, was paid by check in excess of $9,000. Referring to the remainder of the rock crushed by appellant in 1959, Mr. Klinker, president of respondent company, testified:

"A. There was a small pile of crushed rock left there after we had loaded out, and we came to some estimate of what was there, and we both agreed on it; I mean Mr. Hartman, Brear and myself. Q. And that was paid for at

90¢? A. Yes. Q. And then on top of that there is a construction shed? A. $200 for the construction shed. Q. Those two items come to $600? A. Yes. Q. You had agreed on the amount of the construction shed? A. Yes. Q. And how many yards there were of crushed rock, also? A. Yes."

There was no testimony that appellant's claim regarding the failure to furnish the guaranteed minimum of 60,000 cubic yards in 1958 was even discussed at the time of execution and delivery of the check. Mr. Klinker further testified that he, at the time, thought that the check was "for anything he [appellant] thought he had coming."

Mr. Hartman, vice president of respondent company, testified:

"A. I said at the time, 'That is in settlement now, Walt, for everything up to date; is that correct?' Q. What did he answer? A. 'That is fine with me.' Q. Did you hear anything further from him in terms of claims of any kind, either in writing or by conversation? A. None from that date on. Q. Did you consider this as a settlement of any counter claims that you might have against him? A. Naturally. You might call it that. We had a misunderstanding to the extent that I just felt this was the time to settle it for all. We won't have any counter claim if we had this settled."

The foregoing is the only testimony which could be said to indicate that the check was intended as an accord and satisfaction. There is no evidence that appellant believed, or had reason to believe, that the check was intended as a settlement of any claims he might have for breach of contract in 1958.

Furthermore, at least two of respondent's witnesses agreed, and no one disputed, that the check for $600 was given in payment of an agreed price for specific items—the construction shed valued at $200, and $400 worth of crushed rock at 90 cents per cubic yard, which was then on the stockpile and had not theretofore been paid for. As shown by the plain language of the endorsement, the check paid only for these *two* items, which totaled $600.

■ In summary, there is *no* evidence in the record to indicate that the check was intended as anything but pay-

ment for (1) rock crushed in 1959, and (2) the construction shed. There is *no* evidence that respondent's breach of the 1958 contract was even discussed at the time. The only testimony in the record, from witnesses for both parties, indicated that the check was in payment for specific items which bore no relationship to respondent's breach of the 1958 contract.

We conclude that there is not even a scintilla of evidence, much less substantial evidence, to support a finding that "everything up to date" and "anything he thought he had coming" (which otherwise might have been ambiguous) had any reference to appellant's claim for breach of contract. Nor is there any evidence that the term "crushed rock" in the endorsement on the check referred to the 1958 rock-crushing agreement or any claims regarding respondent's breach of that agreement. In fact, if the term could be considered ambiguous at all, all of the evidence which has any bearing on the meaning of the term indicates that the term "crushed rock" referred to the pile of crushed rock for which respondent had not theretofore paid.

Applicable to this case is the statement made by this court in *Bellingham Sec. Syndicate v. Bellingham Coal Mines*, 13 Wn. (2d) 370, 385, 125 P. (2d) 668 (1942):

"Respondent's affirmative defense of accord and satisfaction imposed upon it the burden of proving such defense. The evidence does not establish the existence of a contract between respondent and appellant under the terms of which the latter agreed that the former should be fully discharged of its duty to pay additional royalty. The evidence does not sustain a position that remittances made by respondent, either prior or subsequent to appellant's audit of respondent's books, were intended by respondent to be in full payment of all accrued royalty.

"To create an accord and satisfaction in law, there must be a meeting of minds of the parties upon the subject, and intention on the part of both to make such an agreement. *Ingram v. Sauset*, 121 Wash. 444, 209 Pac. 699, 34 A. L. R. 1031; *Graham v. New York Life Ins. Co.*, 182 Wash. 612, 47 P. (2d) 1029.

"Respondent has also failed to sustain the burden of proving consideration. It must be remembered that an ac-

cord and satisfaction is founded on contract, and consideration therefor is as necessary as for any other contract. The duty imposed by the lease upon respondent to pay additional royalty to appellant was a liquidated obligation. None of the payments made by respondent prior to 1939, when a dispute arose over the amount due, could be consideration for an accord and satisfaction. After the dispute arose, respondent's payments could not furnish consideration. Where a debtor pays what in law he is bound to pay and what he admits that he owes, such payment by the debtor and its acceptance by the creditor, even if tendered as payment in full of a larger indebtedness, can not operate as an accord and satisfaction of the entire indebtedness, as there is an absence of consideration therefor. *Seattle Investors Syndicate v. West Dependable Stores*, 177 Wash. 125, 30 P. (2d) 956; *Graham v. New York Life Ins. Co.*, 182 Wash. 612, 47 P. (2d) 1029."

The trial court erred in holding that the cashing of the check for $600 by appellant under the circumstances disclosed by the testimony constituted an accord and satisfaction.

The second issue is whether or not the trial court erred in finding that appellant had failed to sustain his burden of proof as to damages.

The standard of reasonable certainty in cases involving damages is concerned more with the fact of damage than with the extent or amount of damage. *Gilmartin v. Stevens Inv. Co.*, 43 Wn. (2d) 289, 261 P. (2d) 73, 266 P. (2d) 800 (1953), and authorities cited therein.

If the fact of damage is established, the rule applicable to the ascertainment of the amount of damages takes effect. That rule is stated in *Dunseath v. Hallauer*, 41 Wn. (2d) 895, 902, 253 P. (2d) 408 (1953):

"The difficulty of ascertainment of the amount of damage is not to be confused with the right of recovery. *Park v. Northport Smelting & Refining Co.*, 47 Wash. 597, 92 Pac. 442 (1907); *Ball v. Stokely Foods*, 37 Wn. (2d) 79, 221 P. (2d) 832 (1950); *Pillois v. Billingsley*, 179 F. (2d) 205 (1950). The rule is that, if a plaintiff has produced the best evidence available and if it is sufficient to afford a reason-

able basis for estimating his loss, he is not to be denied a substantial recovery because the amount of the damage is incapable of exact ascertainment. *Ball v. Stokely Foods, supra; Monroe v. Owens*, 76 Cal. App. (2d) 23, 172 P. (2d) 110 (1946); *Stott v. Johnston*, 36 Cal. (2d) 864, 229 P. (2d) 348 (1951); *Shannon v. Shaffer Oil & Refining Co.*, 51 F. (2d) 878, 78 A. L. R. 851 (1931); *Kimball v. Thompson*, 70 F. Supp. 803 (1947); *General Finance Corp. v. Dillon*, 172 F. (2d) 924 (1949). . . ."

 Note, also, that it is immaterial whether or not appellant would have suffered an over-all financial loss even if respondent had not been in breach of the contract. If respondent's compliance with the terms of the contract would have reduced appellant's total loss, then respondent's breach damaged appellant to the extent that it increased his loss.

Appellant's testimony lacked precision, but the record contains sufficient evidence of both the fact of damage and the amount of damages to allow recovery.

Plaintiff's exhibit 3 contains a summary of the costs incurred by appellant while performing under his contract with respondent:

| | |
|---|---|
| "Parts & Repairs | $13,844.76 |
| "Gas & Oil | 1,815.00 |
| "Electric Power | 1,835.29 |
| "Auto Freight | 285.59 |
| "Insurance on Equipment | 1,161.70 |
| "Phone | 222.72 |
| "Payroll & Business Taxes | 3,330.84 |
| Total | $22,495.88 |
| "Employees Wages | $18,038.93 |
| "Depreciation on Equipment | 10,376.74 |
| | $50,911.55" |

If only those items which are clearly fixed expenses are deducted from the prorated cost to be applied to the additional yardage, the cost of producing the additional yardage would be less than the amount paid to appellant for crushing it. That is, only parts and repairs, gas and oil, electric power, and employees' wages are expenses which might have increased with an increase in yardage crushed.

These expenses were less than 90 cents per cubic yard crushed, so that it is reasonably certain that appellant would have reduced his loss, had he been given the opportunity to crush the full 60,000 cubic yards for respondent in 1958.

In addition, there is uncontradicted testimony in the record which would support findings that (1) a large portion of the expenses called "parts and repairs" were expenses of initial installation, (2) electrical power rates remained almost constant regardless of yardage crushed, and (3) employees' wages would have increased little, if any, for the crushing of additional yardage. If these facts were found to be true, appellant's loss would have been considerably reduced by the furnishing of the guaranteed minimum amount of rock.

The important point, however, is that even if every doubt is resolved in favor of respondent, so that only those expenses which are clearly fixed expenses are removed from the list of costs to be considered as expenses for crushing the additional yardage, then appellant would have realized a profit on the additional yardage (in the neighborhood of $2,000), and he would have reduced his overall loss by that amount.

The trial court erred in determining that appellant failed to produce sufficient proof of damages.

Respondent, in its answer to the complaint, and in testimony at the trial, raised certain other issues. There was a counterclaim, and there was testimony that the parties had settled their differences by allowing appellant to bid on another contract. We, of course, make no finding as to these other issues, since the trial court made no finding with regard to them. They did not form the basis of the judgment of the trial court, and they are not involved in this appeal.

We hold, simply, that the $600 check did not constitute an accord and satisfaction, and that there was sufficient proof of damages, so that appellant cannot be barred from recovery by either theory.

The judgment of the trial court is reversed, and the case remanded for a new trial limited solely to the issue of the

452

amount of damages sustained by appellant as the result of respondent's admitted breach of the 1958 contract. Appellant shall recover his costs in this court.

FINLEY, C. J., OTT, HUNTER, and HAMILTON, JJ., concur.

*Reported in 374 P. (2d) 365.