[No. 39024. En Banc. April 4, 1968.]

WILLIAM F. KIBLER, *Appellant,* v. FRANK L. GARRETT & SONS, INC., *Respondent.**

*Reported in 439 P.2d 416.

*Freise & Jones,* for appellant.

*Williams & Golden,* by *Eugene T. Golden,* for respondent.

ROSELLINI, J.—This action on a contract was dismissed at the close of the plaintiff's evidence, the trial court finding, although it had not been pleaded, that there had been an accord and satisfaction. The plaintiff has appealed.

The facts are these: The plaintiff was hired by the defendant to harvest his wheat crop. There was no agreement on the price to be paid. According to the plaintiff's evidence, he told the defendant that, if the wheat crop proved to be more than 50 bushels per acre, the price would be 18 cents per bushel and perhaps more, depending on the circumstances. He testified that the crop was in excess of 50 bushels per acre and there were harvesting difficulties which had not been anticipated due to the presence of guy wires, roads, and risers. He sent the defendant a bill based upon a charge of 25 cents per bushel, but later sent a corrected bill for $876.20 based on 20 cents per bushel. The response which he eventually received to this billing was the following letter and a check for $444:

> This check is for $10.00 an acre, and 37 acres is $370.00. This is what you offered to harvest our wheat for. Seeing that the wheat was fairly heavy, we are paying you $2.00 an acre more, which makes a total of $444.00. Your total pay is 50% more than we paid last year for harvesting the same acres, and 20% more than you agreed to do it for. Billing on this acreage for approximately $30.00 an acre is ridiculous.

Upon receipt of these items, the plaintiff called his attorney and asked if he could safely deposit the check. The attorney asked him to read the notations on it. He read the typewritten notation: "Harvesting Wheat Washington Ranch" and the printed words "Frank L. Garrett & Sons, Inc.", but he did not see a line of fine print on the check which read: "By endorsement this check when paid is accepted in full payment of the following account." The attorney told him he could deposit the check. He did not communicate further with the defendant but proceeded to bring this action.

As we have said, accord and satisfaction was not pleaded as a defense. However, the trial court, observing the fine print on the check and drawing it to the attention of the parties, concluded that, taken in conjunction with the letter, this notation established as a matter of law that there had been an accord and satisfaction.

The rules governing the question of accord and satisfaction are set forth in the leading case of *Graham v. New York Life Ins. Co.*, 182 Wash. 612, 47 P.2d 1029 (1935). They are as follows:

(1) Whether there has been an accord and satisfaction in any given case is generally a mixed question of law and fact.

(2) But where the facts are not in controversy, it is purely a question of law for the court.

(3) To create an accord and satisfaction in law, there must be a meeting of minds of the parties upon the subject and an intention on the part of both to make such an agreement.

(4) An accord and satisfaction is founded on contract, and a consideration therefor is as necessary as for any other contract.

(5) Where the debtor pays what in law he is bound to pay and what he admits that he owes, such payment by the debtor and its acceptance by the creditor, even though tendered as payment in full of a larger indebtedness, do not operate as an accord and satisfaction of the entire indebtedness, because there is no consideration therefor.

(6) Generally speaking, when a debtor sends to his creditor a check in an amount that the debtor is willing to pay, and at the same time informs the creditor that the debtor intends the check to be considered as full payment, then, by accepting and cashing the check, the creditor agrees to the settlement and cannot thereafter seek additional compensation.

(7) But the rule just stated does not apply where there is an agreement that a certain sum shall be paid on account and not in full settlement, and the sending of a check stating that it is in full settlement does not, as a matter of law, under such circumstances, effect an accord and satisfaction.

(8) Nor does that rule apply where the debt or amount is liquidated or certain and due, unless there is a new consideration.

(9) Where the amount of a debt or obligation is unliquidated or in dispute, then the tender by the debtor of a certain sum in full payment of the debt, followed by acceptance and retention of the amount tendered, establishes an accord and satisfaction; but if the amount be liquidated or undisputed, then such tender and acceptance do not establish an accord and satisfaction.

■ The facts are not in dispute in this case, therefore the question is one of law. Did the letter and the check and the cashing of the latter constitute an accord and satisfaction? The claim was unliquidated; therefore, if the check was intended as full payment and that fact was communicated to the plaintiff, his cashing of the check completed the accord.

■ The important question to determine is whether there was a meeting of the minds. In order for this to have occurred, the defendant must have made his intention clear to the plaintiff. The trial court was of the opinion that the letter, when read in conjunction with the fine print on the check, manifested that intention.

The letter itself does not state that the check is sent in full payment. Such an intent might be gleaned from the language that he considers it all that is reasonably owing to

the plaintiff. Yet the last sentence equivocates. The amount asked by the plaintiff is ridiculous, the defendant says, but he does not say, "I will pay no more than the amount enclosed." We think the letter leaves the question of the amount owed open to further negotiation. The fact that the plaintiff did not attempt further negotiation does not alter the import of the language of the letter.

In *Ingram v. Sauset*, 121 Wash. 444, 446-47, 209 Pac. 699, 34 A.L.R. 1031 (1922), this court said:

The rule is thus stated in 1 Cyc. 332.

"To constitute an accord and satisfaction it is necessary that the money should be offered in full satisfaction of the demand, and be accompanied by such acts and declarations as amount to a condition that the money, if accepted, is accepted in satisfaction; and it must be such that the party to whom it is offered is bound to understand therefrom that, if he takes it, he takes it subject to such conditions. The mere fact that the creditor receives less than the amount of his claim, with knowledge that the debtor claims to be indebted to him only to the extent of the payment made, does not necessarily establish an accord and satisfaction. . . ."

Since there were no conditions attached to the acceptance of the check in this case, the letter was not an offer of an accord.

██ Was the condition sufficiently expressed on the check itself? It is unquestioned that the plaintiff did not see the fine print, and his attorney did not see it. The defendant's attorney did not notice it, apparently, until it was called to his attention at the trial. This was a form check, presumably used in the payment of all of the defendant's accounts, whether the payments made were payments in full or partial payments. There was nothing on the check to indicate that the language was particularly applicable to the plaintiff's claim. The trial court felt that the tone of the letter cast upon the plaintiff the duty to examine the check minutely or cash it at his peril. We do not agree. The burden is upon the party alleging an accord and satisfaction to show that there was indeed a meeting of the minds. *See Brear v. Klinker Sand & Gravel Co.*, 60 Wn.2d 443, 374

P.2d 370 (1962). If the language contained in the fine print on the check was of significance in forming an accord, it must appear that the fact of its significance was brought to the plaintiff's attention. The evidence is to the contrary.

In the case of *Washington Fish & Oyster Co. v. G. P. Halferty & Co.,* 44 Wn.2d 646, 269 P.2d 806 (1954), the respondent sued to recover the balance due on a contract. A partial payment had been made by a check with a voucher attached bearing a similar notation, accompanied by a detailed statement showing the "balance" as that amount which was contained in the check. This court held that the language on the check was of no significance, inasmuch as it was a form voucher apparently attached to all checks of the company. It is true that in that case the respondent had received checks previously from the company, presumably with the same form of voucher attached, and that in this case there was no evidence that the parties had had previous dealings, but we do not think that fact is determinative. It is the fact that the notation is obviously formal and applies to all payments made by check, whether or not they are intended as full payment, that renders the language ineffective, and also the fact that it is in print so small that no recipient can be presumed to have read it.

We hold that the proof in this case did not show an accord and satisfaction, since while the claim was disputed, there was no showing that the defendant manifested to the plaintiff his intention to pay no more than the amount which he remitted. To sustain the trial court would necessitate a holding that payment of an amount less than that claimed by the creditor operates as an accord and satisfaction if the amount paid is all that the debtor admits that he owes. This is contrary to the rule we have quoted from *Ingram v. Sauset, supra,* and would place a creditor at a disadvantage in accepting partial payments from a reluctant debtor, since by doing so he would be jeopardizing his right to receive the balance, even though in law that balance was in fact due him. It is true that the courts look with favor on compromise, but this means genuine compro-

mise, arrived at through mutual agreement, and not compromise fallen into inadvertently.

The plaintiff's witnesses testified that the reasonable value of his services was close to the amount which he claimed was due him. The defendant did not present evidence on this question, since the court dismissed the action at the close of the plaintiff's case. As the record now stands, there is no evidence of overreaching on the part of the plaintiff.

The judgment is reversed and the cause remanded for a new trial.

FINLEY, C. J., HILL, HAMILTON, NEILL, and McGOVERN, JJ., concur.

HALE, J. (dissenting)—The facts of this case, in my judgment, present a classic example of accord and satisfaction, and I would, therefore, affirm the trial court. After all, the question of whether the parties have resolved their differences by an accord and satisfaction is largely a question of fact to be determined by the jury, or, as in this case, by the court as trier of the facts. 1 Am. Jur. 2d, *Accord and Satisfaction* § 11.

I agree that the printed notation on the check was insufficient to engender an accord and satisfaction, but the events leading up to the delivery of the check and the circumstance of its cashing provided more than adequate evidence, in my view, to support the trial court's factual finding that Mr. Kibler knowingly cashed the check in full payment and satisfaction of the debt for which it had been tendered. Here are the circumstances as I see them which led inexorably to an accord and satisfaction.

William F. Kibler, plaintiff, a farmer in the Walla Walla area who did some custom harvesting, had been working for several wheat farmers with his harvesting equipment near where the defendant, an incorporated farm, had a 37-acre stand of wheat. Plaintiff, on the telephone, told Mr. Garrett, president of defendant company, that, while he had his crew and equipment in the area, he would like to harvest the 37 acres and Mr. Garrett assented.

Kibler testified that the agreement to harvest was made entirely by telephone; that he told Mr. Garrett his charge was $10 an acre if the wheat ran 50 bushels or less per acre; but that if it exceeded 50 bushels per acre his price was 18 cents a bushel as a "custom charge;" and that, under certain circumstances, he might charge more. He said that Garrett then told him, "Well, go ahead and cut it. We can work out the arrangements." Other than this conversation, the parties made no further mention of and reached no agreement as to price.

Plaintiff then put his crew to work and harvested defendant's field. The 37 acres, an irrigated field, ran 118 bushels to the acre of Gaines wheat, and plaintiff encountered difficulties because of differences in elevation called "risers" and because the field had been cut up into smaller sections by roads and several guy wires. He said that his combine had to travel at minimum speed because the field ran over 100 bushels to an acre, causing him added time and trouble.

After harvesting defendant's 37 acres, plaintiff, September 15, 1965, sent defendant a bill for his services in the amount of $1,095.25, which figured out at the rate of 25 cents per bushel. Five days later, realizing that the 25 cents' rate was an overcharge, he sent defendant a second billing revising and reducing the figure to 20 cents per bushel for a total of $876.20.

More than a month passed and Kibler heard nothing from Mr. Garrett until shortly after November 3, 1965, when he received through the mail defendant's check in the amount of $444 accompanied by the following letter:

This check is for $10.00 an acre, and 37 acres is $370.00. This is what you offered to harvest our wheat for. Seeing that the wheat was fairly heavy, we are paying you $2.00 an acre more, which makes a total of $444.00. Your total pay is 50% more than we paid last year for harvesting the same acres, and 20% more than you agreed to do it for. Billing on this acreage for approximately $30.00 an acre is ridiculous.

On the face of the check were typed the words "Harvesting Wheat Washington Ranch," and printed thereon were

the words "Frank L. Garrett & Sons, Inc." and in fine but legible printing the statement that cashing the check constituted acceptance of the amount in full payment. Plaintiff called his attorney and inquired whether he should cash the check; he said that he did not see, nor inform his attorney of, the caveat that cashing it constituted payment in full. On being advised that he could cash the check, he did so, making no counter proposal that he intended thereby to accept it in partial payment only or as a down payment. He brought this action for the difference between $444 and the $876 billing, without further demands upon or communication with defendant corporation.

Because the warning on the check that its cashing constituted acceptance of the face amount in full payment was set forth in such fine print, and defendant was unable to establish that plaintiff knew of the statement before cashing the check, I have, as earlier indicated, attached no significance whatever to that notation. All of the elements of an accord and satisfaction, however, I think were proved without it.

Accord and satisfaction is a contract, an agreement either express or implied from the circumstances, that the payment is accepted in full discharge and satisfaction of the claimed amount. Being a contract, it requires consideration and does not ordinarily arise where the debt is liquidated and certain, unless, of course, there is a new consideration to support it different than and apart from the consideration for the debt itself. *First Nat'l Bank of Ritzville v. White-Dulaney Co.*, 123 Wash. 220, 212 Pac. 262 (1923). Accordingly, the mere cashing of a check containing a message that it is given in full payment and discharge of the claim or debt does not, as a matter of law, establish an accord and satisfaction if the parties to the transaction have earlier agreed that the payment is on account and not in full settlement. *LeDoux v. Seattle No. Pac. Shipbuilding Co.*, 114 Wash. 632, 195 Pac. 1006 (1921).

In essence, then, there must be a consideration to support a contract of accord and satisfaction in the same way that other kinds of contracts need consideration to sustain them.

*Seattle Investors Syndicate v. West Dependable Stores of Washington,* 177 Wash. 125, 30 P.2d 956 (1934); *Katich v. Evich,* 161 Wash. 581, 297 Pac. 762 (1931); and *Plymouth Rubber Co. v. West Coast Rubber Co.,* 131 Wash. 662, 231 Pac. 25 (1924). These, and other controlling aspects of accord and satisfaction are delineated in *Graham v. New York Life Ins. Co.,* 182 Wash. 612, 47 P.2d 1029 (1935), which, I think, sustains the trial court's conclusion that a contract in accord and satisfaction had been established by the plaintiff's evidence.

The instant case began with an unliquidated claim, an agreement to harvest the wheat for an unspecified sum running from $10 per acre to a greater amount, depending vaguely on unspecified contingencies. Then the creditor sent a bill demanding 25 cents per bushel for a total demand of $1,095.25. A few days later he sent his debtor a corrected or new billing at 20 cents per bushel in the total sum of $876.20, thus conclusively establishing the unliquidated and uncertain nature of the obligation. The debt at the outset was unliquidated and for an uncertain amount; it remained so through the first erroneous billing for $1,095.25 and the second billing at $876.20.

It was still unliquidated and uncertain when defendant sent plaintiff a check for $444 on November 3, 1965, and stated specifically that the check was for the agreed price of $10 per acre, with an added $2 per acre because the wheat was very heavy. The assertions in the letter of transmittal that the enclosed check was 50 per cent more than plaintiff agreed to do the work for, and that the billing sent by plaintiff at nearly $30 an acre was ridiculous, all unmistakably convey the notion that the check was tendered in full payment. Under these circumstances, it should have been clear to a person of ordinary understanding that cashing the check constituted an acceptance of the $444 in full payment and discharge of plaintiff's claim for harvesting defendant's 37 acres.

I would, therefore, affirm.

WEAVER and HUNTER, JJ., concur with HALE, J.