[No. 2453–3.   Division Three.   November 28, 1978.]

JAMES S. BLACK & Co., *Respondent*, v. CHESTER CHARRON, ET AL, *Appellants*.

---

*John R. Kramer,* for appellants.

*Lukins, Annis, Bastine, McKay & Van Marter, P.S.,* and *James S. Black, Jr.,* for respondent.

MUNSON, C.J.—Appellant, Chester Charron,[1] appeals a judgment against him for rent for 19 days and for damage caused by him to a luxury apartment managed by James S. Black & Co. The issues raised on appeal are: (1) whether replacement of 100 percent of the carpeting was reasonable; (2) whether Charron held over for 19 days; (3) whether the security deposit returned to Charron acted as a release or

---

[1]Although we refer only to Chester Charron as appellant, his wife is also a party to this action.

an accord and satisfaction, and (4) whether a security deposit agreement operates as a liquidated damages provision thereby limiting the landlord to the amount of the deposit.

On June 15, 1975, Charron rented an apartment in Riverfalls Tower for $505 per month. Over a year later, he gave notice that he would be moving out on September 1, 1976. During the first week in September, the resident manager inspected the apartment and found several items belonging to Charron left in the apartment. She contacted him, asking that the cleaning of the apartment be completed and the keys returned.

According to several witnesses at trial, the living room carpet had been damaged by rust or mildew stains from plant containers; an area in front of the wet bar was described as extremely worn and "mutilated." Cigarette burns, some burned through the carpeting into the pad, were found in the den. The carpeting in two bedrooms and a hallway was undamaged. Inquiries about cleaning or repairing the damaged areas were made by the property manager; he was told neither cleaning nor repair would restore the carpeting and the particular pattern of carpeting used in that apartment had been discontinued. The property manager then decided to have the carpeting in the entire apartment replaced since it was one of the most luxurious apartments in the 99–unit complex. There was conflicting testimony over the condition of the carpet at the time Charron moved in. The total cost of replacement was $2,723.19. The trial court, after computing a depreciated value, awarded damages for the carpet against Charron for $1,200.

■■ Our review of a trial court's findings of fact is limited to determining whether they are supported by substantial evidence and in turn whether the findings support the trial court's conclusions of law and judgment. Substantial evidence is evidence sufficient to persuade a fair-minded person of the truth of the declared premise. *Holland v. Boeing Co.*, 90 Wn.2d 384, 583 P.2d 621 (1978).

Appellant contends the trial court erred in finding that the carpeting was substantially destroyed and it was reasonable and proper to replace it. In this case, the property manager, a carpeting repair and maintenance man, and a carpeting salesman testified that the carpeting should have been replaced, and to do so was reasonable given the quality of the apartment. Opinion testimony may determine the reasonableness of the replacement and its cost. *Hellbaum v. Burwell & Morford,* 1 Wn. App. 694, 704, 463 P.2d 225 (1969). There was substantial evidence of extensive damage and 100 percent replacement was not unreasonable under the circumstances. We find no error in the finding of the trial court, particularly since a depreciation factor was considered.

Appellant contends the trial court erred in finding he did not vacate the apartment until September 19. Charron had given notice that he would vacate the apartment at the end of August and, according to his brief, removed the "majority of his personal property" at that time. The resident manager testified that she found items belonging to Charron after the first of September and contacted him to remove them. Two women, hired by Charron, cleaned the apartment sometime after the end of August. The keys were not returned until September 19, 1976.[2] This evidence was sufficient to find that Charron had not vacated the premises at the end of August. The trial court did not err in assessing Charron for back rent for the 19 days that he held over. *See* RCW 59.18.290(2).

■ An addendum to the lease agreement provided that Charron pay a $225 security deposit, which he paid prior to taking possession of the apartment in June 1975. The deposit was inadvertently returned to him the early part of October 1976. The property manager testified that the

---

[2]If Charron's possessions had been removed and the apartment cleaned at the end of August, then the penalty provision of $10 for unreturned keys should have been given effect. But where his personal property remained and his control of the apartment had not been relinquished, he did not in fact vacate the premises.

deposit return had been a clerical error. Appellant contends that the return of the deposit operated as either a release or an accord and satisfaction. A release is a surrender of a claim which may be given for less than full consideration, even gratuitously. *DeNike v. Mowery,* 69 Wn.2d 357, 366, 418 P.2d 1010 (1966); *Litts v. Pierce County,* 5 Wn. App. 531, 533–34, 488 P.2d 785 (1971). However, it is frequently a question of fact as to whether the parties intended a release to be full compensation. There is little question in this case that James S. Black & Co. did not intend a gratuitous release of all damages to the apartment as a result of a clerical error. *See Finch v. Carlton,* 84 Wn.2d 140, 524 P.2d 898 (1974).

The courts also look to the intention of the parties as to whether there has been an accord and satisfaction. Generally, the important question is whether there was a meeting of the minds as to a genuine compromise, arrived at through mutual agreement, and not "fallen into inadvertently." *Kibler v. Garrett & Sons, Inc.,* 73 Wn.2d 523, 529, 439 P.2d 416 (1968); *see also Plywood Marketing Associates v. Astoria Plywood Corp.,* 16 Wn. App. 566, 574, 558 P.2d 283 (1976). We find no mutual agreement due to the inadvertent return of the security deposit which operated as an accord and satisfaction.

Finally, appellant contends that the security deposit addendum to the lease operated as liquidated damages, and therefore, respondent's recovery is limited to the $225 deposit. We find no merit to this contention. The addendum was clearly labeled a "Security Deposit Agreement." Such agreements are governed by statutes[3] which provide that a security deposit agreement will not preclude a landlord from proceeding against a tenant for sums exceeding the amount of the deposit. RCW 59.18.280. There is no indication that the parties intended the security deposit agreement as a waiver or an election of remedies by the landlord. *Pague v. Petroleum Prods., Inc.,* 77 Wn.2d 219,

[3]RCW 59.18.260; RCW 59.18.270.

224, 461 P.2d 317 (1969); *see also* Stoebuck, *The Law Between Landlord and Tenant in Washington,* 49 Wash. L. Rev. 1013, 1032–33 (1974). Generally, "[a]ntecedent waivers of remedies must be clearly expressed and agreed upon." *Green River Valley Foundation, Inc. v. Foster,* 78 Wn.2d 245, 251, 473 P.2d 844 (1970). We find no error by the trial court in awarding damages and back rent against appellant.

Judgment is affirmed and the case remanded to the Superior Court for an award of respondent's costs and reasonable attorney's fees pursuant to the lease agreement.

McINTURFF and ROE, JJ., concur.

Reconsideration denied December 28, 1978.

Review denied by Supreme Court March 16, 1979.