[No. 21335-8-III.   Division Three.   December 9, 2003.]

U.S. BANK NATIONAL ASSOCIATION, *Appellant*, v. PHILIP A. WHITNEY, ET AL., *Respondents*.

*Wendell G. Kusnerus* (of *Davis Wright Tremaine*), for appellant.

*Jerry K. Boyd* and *Leland B. Kerr* (of *Paine, Hamblen, Coffin, Brooke & Miller, L.L.P.*), for respondents.

SWEENEY, J. —The Uniform Commercial Code (UCC), Title 62A RCW, requires, first and foremost, good faith, fair dealing, and commercial reasonableness. The code also requires that payment on a promissory note must be tendered in the amount due and at the place stated in the instrument. Here, a debtor purported to tender payment at a bank branch other than that designated as the place for payment, in an amount less than the amount due, and with a third-party check—all without explanation. This tender did not, then, constitute payment on the notes. We reverse the trial court's ruling to the contrary. We affirm the court's conclusion that, absent mutual agreement, subsequent tender of a check for the disputed balance did not constitute an accord and satisfaction.

## FACTS

HISTORY

The historical facts are not disputed.

Philip and Arva Whitney farm near Prosser, Washington. In 1987, they filed for chapter 12 bankruptcy protection. The bankruptcy court allowed U.S. Bank National Association $237,500 in secured claims. Of this, $210,000 was secured by mortgages on farm real estate and $27,500 by mortgages on equipment. The bankruptcy court restructured the two U.S. Bank loans pursuant to stipulation. The order called for annual payments.

In 1989 and 1990, the Whitneys made payments at local U.S. Bank branch offices where they were known, either personally or through counsel or the bankruptcy trustee.

In 1991, the interest computation formula changed pursuant to the bankruptcy order. The Whitneys disputed the payment amount. They calculated the combined annual

payment on the two loans at $30,389. The bankruptcy court issued an order clarifying the annual payments as $24,575.97 and $7,979.66 respectively, for a combined annual payment of $32,555.63.

In October 1991, U.S. Bank sent the Whitneys two payment invoices totaling $32,555.63, due on November 1, 1991. Each invoice included a tear-off portion to be mailed with the payments to the bank's loan processing center in Yakima. No other bank address appeared on the invoices.

The Whitneys mailed two checks to U.S. Bank's Seattle main branch. The checks totaled only $30,389—the amount rejected by the bankruptcy court a few months before. The checks were drawn on the Home Security Bank account of Whitney Farms, Inc., a closely held corporation of the Whitney family. The payee was U.S. Bank. Philip and Arva Whitney signed the checks. But the printed information on the checks did not include their names. The Whitneys did not include the tear-off portions of the invoices or any other accompanying documentation to identify the purpose of the checks. On the memo line of each check they wrote: "Case-87-02667-K22." Clerk's Papers (CP) at 365.

The Seattle bank did not recognize the checks as intended payments, did not accept them as such, and did not, therefore, credit them against the Whitneys' debts. But Whitney Farms, Inc. had an account at the Seattle branch of U.S. Bank. And so U.S. Bank in Seattle treated the checks as deposits and put them through the collection process. The $30,389 wound up in the Whitney Farms corporate account at U.S. Bank. The next bank account statement to Whitney Farms on November 28, 1991, showed a "credit adjustment" for $30,389.

On December 4 (at about the time the Whitneys would have received their bank statement), the Whitneys wrote a check on the Whitney Farms, Inc. account for $30,389, payable to Whitney Construction, Inc. for a construction project on the Whitneys' home. Philip Whitney was a partner of Whitney Construction.

Ultimately U.S. Bank's records showed the Whitneys as delinquent on their loan obligation. So the bank demanded payment. The Whitneys refused. The bank then filed a motion in federal court to dismiss the Whitneys' chapter 12 bankruptcy. The Whitneys offered to tender the correct payment amounts if U.S. Bank agreed to waive additional interest and attorney fees. U.S. Bank agreed on the condition that the Whitneys agree to sign a release of all claims. The Whitneys sent checks in the correct amounts with a letter from their lawyer saying the checks "represent the payments due." CP at 967. But the Whitneys declined to sign a release of claims. The bank backdated the payments to November 1, 1991, without additional interest or fees. The bank also withdrew its motion to dismiss the bankruptcy.

The bank continued to send the Whitneys annual loan invoices. These statements reflected the February 1992 replacement checks but not the checks sent to Seattle on October 31, 1991. In December 1992, the Whitneys paid off the entire equipment loan balance of $13,849. This amount was almost twice what the payoff balance would have been if the October 1991 checks had been credited.

On December 7, 1999, Mr. Whitney tendered a final payment of $21,414.36, which, according to his own calculations, was the outstanding balance on the real estate loan. This amount reflected credit for both the October 1991 payment and the replacement payment in February 1992. The Whitneys thus insisted on credit for the October 1991 "payment." The bank insisted that only the February 1992 payment was made and that the balance due was $59,320.45. Bank employees testified that they accepted the check on the clear understanding that no accord had been reached as to the disputed balance and that Mr. Whitney's tender of the check was not conditioned on the bank's acceptance of Mr. Whitney's accounting. On the same day, Jonathan Wolf, Special Asset Officer at U.S. Bank, sent Mr. Whitney a letter memorializing their discussion. The letter says the parties disputed the amount

due, but that Mr. Whitney agreed there was "no condition of payoff" attached to the $21,414.36 payment. CP at 378. The bank cashed the check.

The bank refused to release the mortgage when the Whitneys refused to pay the balance due.

PROCEDURE

On March 15, 2001, U.S. Bank filed a foreclosure action on the mortgage securing the real property loan. The Whitneys answered and asserted the affirmative defense of accord and satisfaction. They also counterclaimed for damages based on the bank's refusal to release the mortgage. Later, the Whitneys amended their answer to include the affirmative defense of payment. They also claimed an overpayment of $7,245 on the equipment loan, based on the bank's failure to credit the November 1991 payment on that loan.

Both sides moved for summary judgment. The superior court granted the Whitneys' motion and denied U.S. Bank's. But after considering the bank's motion for reconsideration, the court entered a final order in which it:

- ruled that both of the October 1991 checks counted as loan payments. The promissory notes secured by the mortgages were therefore paid off on December 7, 1999, and must be discharged;
- ruled that the Whitneys were unjustly enriched by the $30,389 they withdrew from their corporate farm account in December 1991;
- granted judgment in favor of U.S. Bank in that amount plus interest;
- rejected the Whitneys' accord and satisfaction claim.

The Whitneys moved for reconsideration. They claimed, for the first time, that the statute of limitations barred the unjust enrichment claim. The court denied this motion without a hearing and entered judgment.

U.S. Bank appeals the ruling that the Whitneys' obligation was discharged in the amount of the October 1991

checks as a matter of law. The Whitneys cross-appeal the court's ruling that they were unjustly enriched and that they failed to prove accord and satisfaction.

## DISCUSSION

### APPLICABLE LAW

We generally apply the governing law agreed on by the parties and applied by the trial court, unless to do so would result in a manifest injustice.[1] Here, the bankruptcy proceedings converted the underlying obligation from a promissory note into a court order. And a court order is not a negotiable instrument and is not, therefore, governed by the UCC. But both parties and the court adopted the UCC as the law governing both the promissory notes and the checks. We therefore treat the underlying obligation as a promissory note, a negotiable instrument, and look to the current version of the UCC as controlling authority. The parties agree the applicable provisions of the former and current versions of the UCC are the same. *Yuan v. Chow*, 96 Wn. App. 909, 912, 982 P.2d 647 (1999) (amendments are retroactive so long as they do not substantively change the law). The common law applies absent a contrary UCC provision. RCW 62A.1-103.

### GOOD FAITH AND FAIR DEALING

Interpretation of every provision of the UCC assumes actions undertaken in good faith. RCW 62A.1-102(3). With respect to negotiable instruments, good faith means "honesty in fact and the observance of reasonable commercial standards of fair dealing." RCW 62A.3-103(a)(4). As to banking transactions, UCC article 4 spells out reasonable standards. Bank customers are required to examine their statements and "promptly notify the bank" of any problems,

---

[1] *Lutheran Day Care v. Snohomish County*, 119 Wn.2d 91, 113, 829 P.2d 746 (1992) (unchallenged jury instructions) (citing 15 LEWIS H. ORLAND & KARL B. TEGLAND, WASHINGTON PRACTICE: JUDGMENTS § 380, at 56 (4th ed. 1986)); *Folsom v. County of Spokane*, 111 Wn.2d 256, 263, 759 P.2d 1196 (1988); *Truck Ctr. Corp. v. Gen. Motors Corp.*, 67 Wn. App. 539, 544 n.3, 837 P.2d 631 (1992) (contract).

including unauthorized endorsements. RCW 62A.4-406(c). After one year, the customer is precluded from asserting an unauthorized endorsement against the bank. RCW 62A.4--406(f).

TENDER OF PAYMENT

U.S. Bank argues that the October 1991 checks did not constitute payment on the promissory notes. They were third party checks. They were for the wrong amount. They went to the wrong place. They did not include identifying documentation, either that provided by U.S. Bank or otherwise. Nor did the checks indicate in any other way the name of the loan debtor. And finally, there was nothing identifying them as loan payments.

The Whitneys respond that the payments were timely made and were misdirected due to an error by employees of U.S. Bank. And the Whitneys are not responsible for this error.

*Standard of Review.*

We review an order of summary judgment de novo. And so we engage in the same inquiry as the trial court. The questions raised here are strictly questions of law. And accordingly, de novo review is appropriate. *Wilson v. Steinbach*, 98 Wn.2d 434, 656 P.2d 1030 (1982).

*Payment.*

■ Payment is an affirmative defense. The Whitneys therefore have the burden of proof. RCW 62A.3-308(b). The checks at issue here failed in several respects to meet the definition of payment, under either the common law or under the UCC.

Place. Payment at the Seattle main branch of the bank did not constitute effective tender of payment under the UCC.

■■ Tender of payment on a note must be made at the place of payment to be effective. *Bardsley v. Wash. Mill Co.,*

54 Wash. 553, 557, 103 P. 822 (1909). The place of payment of a promissory note is the place stated in the instrument. RCW 62A.3-111. A separate branch or office of a bank is a different bank for the purpose of *place of payment*. RCW 62A.4-107.

The Whitneys claim that neither the promissory notes nor the bankruptcy order incorporating them states a place of payment. This is contrary to this record. The place of payment stated in one note is the Bank of Yakima in Yakima, "or at such *other place . . . as the holder hereof may from time to time designate*." CP at 748 (emphasis added). U.S. Bank is the holder. U.S. Bank clearly designated the place of payment—*its Yakima loan payment processing facility*—and included identifying information in a tear-off to be sent in with the payment. The record also contains an agricultural note, in which the place of payment is the bank "*at its Prosser Branch*." CP at 753 (emphasis added). The Whitneys simply did not comply.

██ Amount. A creditor is not required to accept tender of payment in the wrong amount. Under the common law, payment requires both receipt of funds by the creditor and the intention of both parties that the funds should constitute payment. *Thrifty Supply Co. of Seattle, Inc. v. Deverian Builders, Inc.*, 3 Wn. App. 425, 428-29, 475 P.2d 905 (1970).

Mutual Intent. Payment also requires both receipt of funds by the creditor, and the intention on behalf of both parties that the funds should constitute payment. *Id.*

██ And the obligation on a note is not discharged by an act of which the holder lacks notice. RCW 62A.3-601(b). A person has notice of a fact when he or she (a) has actual knowledge, or (b) receives notice, or (c) has reason to know of it under the circumstances. RCW 62A.1-201(25). A person gives notice by taking the steps reasonably required to inform the other in the ordinary course of business. RCW 62A.1-201(26).

Here, U.S. Bank did not have actual knowledge of payment. It did not receive notice of a payment discharging the

Whitneys' obligation on the promissory notes. And the circumstances did not give the bank reason to know. Neither can it be said that the Whitneys took reasonably required steps to notify the bank that these checks were intended to discharge their mortgage obligation.

 ■ The Whitneys argue that the bankruptcy case number on the memo line of the checks constitutes sufficient notice to U.S. Bank that the Whitney Farms checks were tendered as payments on the Whitneys' individual obligations. But a bank is not expected to read and act upon the memorandum portion of a check. *Woods v. Bank of N.Y.*, 806 F.2d 368, 371 (2d Cir. 1986). Memoranda are presumed to be placed on the instrument by the depositor for his or her own convenience. They do not constitute notice to the bank of the purpose of the check. Even where a deposit slip is included, instructions must be "in the shape of a plain direction, if such a duty is to be imposed on the bank." *State Nat'l Bank v. Dodge*, 124 U.S. 333, 346, 8 S. Ct. 521, 31 L. Ed. 458 (1888).

 ■ Under the standard of ordinary care imposed by the UCC, a nonpayor depository bank is not obligated to the drawer of a check to examine the face of the instrument before accepting it for deposit. RCW 62A.3-103(a)(7); *see generally*, 2 JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 19-3, at 251-52 (4th ed. 1995). The bankruptcy case number on the memo line was the only clue from which the Whitneys expected U.S. Bank to divine their subjective intent as to the destination of these checks. This is not the function of the memo line.

 ■ The Whitneys argue that Seattle's main branch of U.S. Bank had a duty to recognize that the checks were signed by individuals and to recognize that it was handling a transaction for the signatories, not the account holder. But the individual Whitneys had no relationship to the Seattle branch of U.S. Bank, at least with respect to these checks. A bank owes no duty of care to a noncustomer with whom it has no relationship. *Volpe v. Fleet Nat'l Bank*, 710 A.2d 661, 664 (R.I. 1998).

The Whitneys insist that Whitney Farms, Inc., had no duty with respect to the allegedly mishandled checks, and that the bank owed a duty to the Whitneys as individuals again to divine and carry out their subjective intent. This is the reverse of the code. If the individual Whitneys' signatures on the Whitney Farms checks did not authorize their deposit into the Whitney Farms account, as the U.S. Bank, Seattle branch customer, Whitney Farms was charged with the statutory duty to detect the mistake and notify the bank. RCW 62A.4-406(c). The Seattle bank is charged with no duty to Mr. and Ms. Whitney as individuals. *Volpe*, 710 A.2d at 664.

These checks did not constitute tender of payment.

ACCORD AND SATISFACTION

Finally, the Whitneys contend that their December 7, 1999, tender of $21,414.36 at the Prosser branch satisfied the remaining balance due on the real estate loan because the bank accepted and cashed the check.

■ Whether there has been an accord and satisfaction is generally a mixed question of law and fact. But where, as here, the facts are not in controversy, it is purely a question of law. *Kibler v. Frank L. Garrett & Sons*, 73 Wn.2d 523, 525, 439 P.2d 416 (1968).

■ ■ The Uniform Commercial Code provides for accord and satisfaction of negotiable instruments in accordance with common law principles. RCW 62A.3-311; *Dep't of Fisheries v. J-Z Sales Corp.*, 25 Wn. App. 671, 682, 610 P.2d 390 (1980). The burden of proof is on the Whitneys as the party asserting the defense. RCW 62A.3-311(a); *Gleason v. Metro. Mortgage Co.*, 15 Wn. App. 481, 498, 551 P.2d 147 (1976). When the debtor tenders a check in full payment of a debt, acceptance by the creditor creates a settlement contract binding on both parties. *Or. Mut. Ins. Co. v. Barton*, 109 Wn. App. 405, 413, 36 P.3d 1065 (2001), *review denied*, 146 Wn.2d 1014 (2002); *Hynes v. Hynes*, 28 Wn.2d 660, 672, 184 P.2d 68 (1947).

The Whitneys rely on the general rule that an accord may be implied from the circumstances. "It is to be implied if, in fact, the amount due is disputed, the debtor tenders his check in full payment of the debt, and the creditor cashes the check." *Evans v. Columbia Int'l Corp.*, 3 Wn. App. 955, 957, 478 P.2d 785 (1970). But the court in *Evans* cites *Kibler*, 73 Wn.2d 523. *Evans*, 3 Wn. App. at 957. And *Kibler* does not establish such a bright-line rule.

■■ If the amount of a debt is unliquidated or disputed, then the tender of a certain sum in full payment, followed by acceptance and retention of the amount tendered, establishes an accord and satisfaction. But the rule does not apply to amounts that are liquidated or certain and due. *Kibler*, 73 Wn.2d at 526. The amounts at issue here are liquidated, certain and due.

■■ ■■ An accord requires a "meeting of minds," an intention on the part of both parties to create an accord and satisfaction as a matter of law. *Id.* at 525. No accord is established where the amount owed remains open to further negotiation. *Id.* at 527. The tender must be accompanied by conduct and declarations by the debtor from which the creditor cannot fail to understand that the money is tendered on the condition that its acceptance constitutes satisfaction. " 'The mere fact that the creditor receives less than the amount of his claim, with knowledge that the debtor claims to be indebted to him only to the extent of the payment made, does not necessarily establish an accord and satisfaction.' " *Id.* (quoting *Ingram v. Sauset*, 121 Wash. 444, 447, 209 P. 699 (1922)).

Here, the Whitneys established a dispute as to the amount owed and U.S. Bank's acceptance of the check. They did not establish a meeting of the minds that the money was offered only on condition of accord and satisfaction. Mr. Whitney's testimony and that of Mr. Wolf and Mr. Wolf's letter written to Mr. Whitney the same day show that the bank's acceptance of the money did not constitute an accord.

The trial court, then, correctly rejected the accord and satisfaction defense as a matter of law.

ATTORNEY FEES

The trial court reserved the matter of fees pending resolution of all the issues between these parties. The loan documents allow the bank attorney fees and costs.

HOLDING

We reverse the trial court's ruling that the October 1991 checks constituted payment on the notes. U.S. Bank was entitled to judgment as a matter of law. The equitable unjust enrichment judgment in favor of U.S. Bank is, therefore, superfluous and is also reversed. We affirm the trial court's rejection of the Whitneys' accord and satisfaction claim. We remand for further proceedings in accordance with this opinion.

BROWN, C.J., and KATO, J., concur.

Reconsideration denied February 5 , 2004.